# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2017AP631 |
| COMPLETE TITLE: | Christopher Kieninger and Dewayne Meek, Plaintiffs-Appellants, v. Crown Equipment Corporation d/b/a Crown Lift Trucks, LLC, Defendant-Respondent-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 380 Wis. 2d 282, 913 N.W.2d 234
(2018 – unpublished)

| | |
|---|---|
| OPINION FILED: | March 20, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 12, 2018 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Dane |
| JUDGE: | Ellen K. Berz |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-respondent-petitioner, there were briefs filed by *David J.B. Froiland*, *Christine Bestor Townsend*, *and Ogletree*, *Deakins*, *Nash*, *Smoak*, *& Stewart*, *P.C.*, Milwaukee, with whom on the briefs were *Lynn M. Stathas*, *Malinda J. Eskra*, and *Reinhart Boerner Van Deuren S.C.*, Madison. There was an oral argument by *David J.B. Froiland*.

For the plaintiffs-appellants, there was a brief filed by *Kurt C. Kobelt* and *Law Offices of Kurt C. Kobelt*, Middleton. There was an oral argument by *Kurt C. Kobelt*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2017AP631
(L.C. No. 2014CV2791)

STATE OF WISCONSIN    :    IN SUPREME COURT

Christopher Kieninger and Dewayne Meek,

    Plaintiffs-Appellants,

    v.

Crown Equipment Corporation d/b/a Crown Lift Trucks, LLC,

    Defendant-Respondent-Petitioner.

**FILED**

**MAR 20, 2019**

Sheila T. Reiff
Clerk of Supreme Court

---

REVIEW of a decision of the Court of Appeals. *Reversed.*

¶1 DANIEL KELLY, J. Messrs. Christopher Kieninger and Dewayne Meek tell us that Wisconsin's statutes and regulations require their employer to pay them for the time they spend driving a company-provided vehicle between their homes and their assigned jobsites.[1] Because our laws do not impose such an obligation, we reverse the court of appeals.

---

[1] This is a review of an unpublished decision of the court of appeals, <u>Kieninger v. Crown Equipment Corp.</u>, No. 2017AP631, unpublished slip op. (Wis. Ct. App. Jan. 18, 2018), which reversed the judgment of the Dane County Circuit Court, the Honorable Ellen K. Berz presiding.

I.  BACKGROUND

¶2    Crown manufactures industrial equipment, including forklifts.  It employs field service technicians ("Technicians") throughout Wisconsin to service that equipment.  Technicians travel to customers' locations in Crown's vans, which are stocked with the tools, equipment, and supplies necessary to their work.[2]    Crown's dispatchers and the Technicians collaboratively schedule the service calls to, in part, minimize travel time and maximize time spent serving the customers.  Technicians typically are able to choose which service calls will be the first and last of the day.

¶3    Technicians have the choice of commuting between work and home in either their personal vehicles or the company's vans.  A Technician choosing the former drives his personal vehicle to his assigned branch prior to the beginning of his shift.  There, he picks up the company van and makes his appointed rounds.  At the end of his shift, he takes the van back to his branch location, and drives his personal vehicle home.  If he chooses the latter option, he drives the company van home after the last service call of the shift, and the next day drives it directly to the first scheduled service call.

---

[2] Crown has four branch locations in Wisconsin:  Milwaukee, Green Bay, La Crosse, and Madison.  Each Technician is assigned to a branch, and serves customers within that branch's area. However, there are circumstances, not relevant to this case, in which a Technician may be required to serve a customer outside of his assigned branch's area.

Technicians who commute in a company van usually arrange the first and last appointments so they are as close to home as possible.

¶4 Crown pays its Technicians for all of the time they spend traveling between jobsites as well as between jobsites and Crown facilities. It does not pay them for commute time between home and work when using their personal vehicles. Commute time in a Crown-provided van is handled differently. Historically, Crown paid for time spent commuting in a company van between home and the first or last service call, except for the first 30 minutes of each. That policy changed in September 2013.

¶5 The new policy still allows a Technician to commute in one of Crown's vans. It provides that "[h]ourly Technicians who drive a company vehicle in the course of employment with Crown may be given the option to park the vehicle at home between shifts." With respect to compensation for travel between home and work, however, the Commute Travel Time Guidelines (the "Guidelines") now say the following:

Commute Travel at the Beginning of the Work Day

A technician will begin clocking compensated time when one of the following has occurred:
  1. The technician has arrived at the customer guard shack or customer's parking space.
  2. The technician has arrived at the branch.
  3. The technician arrives at location for the vehicle to be serviced.
  4. Forty five (45) minutes of commute travel has elapsed. Commute travel greater than 45 minutes at the beginning of the work day will be compensated.

3

<u>Commute Travel at the End of the Work Day</u>

The work day ends when all work related activities have been completed. This includes properly placing all tools and other items in the vehicle, completing all forms and paperwork, and communicating with dispatch as necessary. Commute time begins when the technician has left the last work location. A technician's commute from the assigned work area to home is not compensated.

¶6 Messrs. Kieninger and Meek are two of Crown's Technicians. They both opted to commute between home and work in Crown's vans, and each signed a copy of the Guidelines. Nevertheless, they believe that the entire time spent commuting between home and work in a company van is "an integral part of their jobs" for which they must be paid.

¶7 Mr. Kieninger filed a complaint with the Wisconsin Department of Workforce Development (the "DWD") claiming entitlement to unpaid wages based on his commute time in a company van. The DWD dismissed the claim. Mr. Kieninger reprised his claim in a complaint filed in the Dane County Circuit Court, in which he proposed to represent a class comprising all similarly-situated Crown Technicians. He amended his complaint to add Mr. Meek as a named party, and the circuit court subsequently certified the class pursuant to Wis. Stat. § 803.08 (2013-14).[3] The parties filed competing motions for summary judgment on the question of whether commute time in a company-provided vehicle is compensable. They each assured the

---

[3] All subsequent references to the Wisconsin Statutes are to the 2017-18 edition unless otherwise specified.

4

circuit court that the case presented no genuine issue as to any material fact.

¶8 The circuit court granted Crown's motion. It reasoned that it must interpret Wisconsin's labor laws consistently with federal labor laws. Because it concluded that the federal Employee Commuting Flexibility Act (the "ECFA")[4] definitively answered the question, it adopted a conforming interpretation of Wisconsin's labor regulations and dismissed the complaint. Messrs. Kieninger and Meek——we will refer to them collectively as "Mr. Kieninger" unless the context requires otherwise—— appealed.

¶9 The court of appeals disagreed with the circuit court's use of the ECFA to develop an interpretation of Wisconsin's regulations. See Kieninger v. Crown Equipment Corp., No. 2017AP631, unpublished slip op., ¶21 (Wis. Ct. App. Jan. 18, 2018) ("Crown does not convincingly explain why ECFA language——wording that was not adopted by the Wisconsin Legislature——should control over the language actually in place."). As to whether Wisconsin's statutes and regulations—— without reference to federal law——require payment for commuting time in a company-provided vehicle, the court of appeals said it was "uncertain whether under the correct standard there might be one or more genuine issues of material fact," id., ¶3, and so reversed the circuit court and remanded for further briefing. Crown petitioned for review.

_____

[4] 29 U.S.C. § 254 (2012).

¶10 We agree with the court of appeals that the ECFA does not guide our application of Wisconsin law in this case. However, we do not agree that further briefing is necessary, or that there may be a genuine dispute as to a material fact. We conclude that Crown is entitled to summary judgment in its favor, and so we reverse the court of appeals.

## II. STANDARD OF REVIEW

¶11 We review the disposition of a motion for summary judgment de novo, applying the same methodology the circuit courts apply. Green Spring Farms v. Kersten, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987); see also Borek Cranberry Marsh, Inc. v. Jackson Cty., 2010 WI 95, ¶11, 328 Wis. 2d 613, 785 N.W.2d 615 ("We review the grant of a motion for summary judgment de novo . . . ."). First, we "examine the pleadings to determine whether a claim for relief has been stated." Green Spring Farms, 136 Wis. 2d at 315. Then, "[i]f a claim for relief has been stated, the inquiry . . . shifts to whether any factual issues exist." Id. Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Wis. Stat. § 802.08(2) (2015-16); see also Columbia Propane, L.P. v. Wis. Gas Co., 2003 WI 38, ¶11, 261 Wis. 2d 70, 661 N.W.2d 776 (citing Wis. Stat. § 802.08(2) (2001-02)).

¶12 In the course of this opinion, we will consider the meaning and application of various statutes and regulations.

These are questions of law that we review de novo. State v. Alger, 2015 WI 3, ¶21, 360 Wis. 2d 193, 858 N.W.2d 346 ("The interpretation and application of a statute present questions of law that this court reviews de novo . . . ."); United Food and Commercial Workers Union Local 1473 v. Hormel Foods Corp., 2016 WI 13, ¶30, 367 Wis. 2d 131, 876 N.W.2d 99 ("Interpretation and application of a regulation is ordinarily a question of law that this court determines independently of the circuit court or court of appeals . . . .").

### III. ANALYSIS

¶13 Mr. Kieninger tells us the Guidelines unlawfully relieve Crown of the obligation to pay him for the entirety of the time he spends commuting between home and work in a company-provided vehicle. Because he based his claim on Wisconsin's laws,[5] we will rely on that authority to decide this case, unless federal law dictates a different result. Our analysis, therefore, will begin where it must——with what Wisconsin's statutes and regulations require in these circumstances. Afterwards, we will determine whether federal law proscribes what Wisconsin prescribes.

---

[5] The amended complaint alleges two counts against Crown: (1) violation of Wisconsin wage payment laws under Wis. Stat. §§ 104.02, 109.03 and Wis. Admin Code § DWD 272.03 (Feb. 2009), and (2) violation of Wisconsin overtime compensation law under Wis Stat. §§ 103.02, 109.03 and Wis. Admin. Code § DWD 274.03. He did not include any federal claims.

¶14 Our responsibility is to ascertain and apply the plain meaning of the statutes as adopted by the legislature. To do so, we focus on their text, context, and structure. "[S]tatutory interpretation 'begins with the language of the statute,'" and we give that language its "common, ordinary, and accepted meaning." State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶¶45-46, 271 Wis. 2d 633, 681 N.W.2d 110 ("Context is important to meaning. So, too, is the structure of the statute in which the operative language appears. Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes . . . ."). In performing this analysis, we carefully avoid ascribing an unreasonable or absurd meaning to the text. Id., ¶46 ("[S]tatutory language is interpreted . . . reasonably, to avoid absurd or unreasonable results."). If we determine the statute's plain meaning through this methodology, we go no further. Kalal, 271 Wis. 2d 633, ¶45 ("If the meaning of the statute is plain, we ordinarily stop the inquiry." (internal marks and citation omitted)); see generally Daniel R. Suhr, Interpreting Wisconsin Statutes, 100 Marq. L. Rev. 969 (2017).[6]

---

[6] These rules of interpretation apply with equal force to administrative regulations: "When interpreting administrative regulations the court uses the same rules of interpretation as it applies to statutes." United Food and Commercial Workers Union Local 1473 v. Hormel Foods Corp., 2016 WI 13, ¶30, 367 Wis. 2d 131, 876 N.W.2d 99.

A. Wisconsin and the Payment of Commuting Time

¶15 Mr. Kieninger says Crown's duty to pay him for commuting time arises from the statutory mandate that "[e]very employer shall . . . pay to every employee engaged in the employer's business . . . all wages earned by the employee . . . ." Wis. Stat. § 109.03(1).[7] Essentially, Mr. Kieninger claims that his workday commences the moment he leaves home, at the beginning of a shift, because he is transporting Crown's tools to a jobsite. Similarly, he says his workday does not end until he reaches home because he is still carrying the tools. Crown says that commuting between home and work is no part of its business, and so it has no duty to pay Technicians for time spent doing so.

¶16 The statute on which Mr. Kieninger relies is, of course, insufficiently specific to resolve the parties' divergent positions, so we look to the relevant administrative regulations.[8] The DWD provides several guideposts that help us identify wages earned by the Technicians. Here, we learn that wages accrue when employees are engaged in "physical or mental

---

[7] Employers may not contractually avoid this obligation. See Wis. Stat. § 109.03(5) ("[N]o employer may by special contract with employees or by any other means secure exemption from this section.").

[8] "Administrative rules enacted pursuant to statutory rulemaking authority have the force and effect of law in Wisconsin." Staples v. DHSS, 115 Wis. 2d 363, 367, 340 N.W.2d 194 (1983).

9

exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer's business." Wis. Admin. Code. § DWD 272.12(1)(a)1 (Feb. 2009). (internal marks omitted). These exertions take place within a "workday," which comprises:

> [T]he period between the time on any particular workday at which such employee commences their principal activity or activities and the time on any particular workday at which they cease such principal activity or activities. The "workday" may thus be longer than the employee's scheduled shift, hours, tour of duty, or time on the production line. Also, its duration may vary from day to day depending upon when the employee commences or ceases their "principal" activities.

§ DWD 272.12(1)(a)2. (some internal marks omitted).[9] The "principal activities" of which a workday consists "include[] all activities which are an integral part of a principal activity." § DWD 272.12(2)(e)1. Tasks "integral" to a principal activity encompass "those closely related activities which are indispensable to its performance." § DWD 272.12(2)(e)1.c.

¶17 Distilling this guidance into a workable framework tells us that an employee's activity is compensable if it takes place during a workday (that is, it is part of the employee's principal activities, or is closely related and indispensable to them), it involves physical or mental exertion controlled or required by the employer, and it is necessarily and primarily

---

[9] "Compensable time is defined in the regulations in terms of a 'workday.'" Hormel Foods Corp., 367 Wis. 2d 131, ¶40.

done for the benefit of the employer's business. Before we may apply that framework to the claim at issue here, however, we must account for the special rules specifically related to travel time.

¶18 The DWD has adopted "principles which apply in determining whether or not time spent in travel is working time . . . ." Wis. Admin. Code § DWD 272.12(2)(g)1. One of those principles is that time spent commuting between home and work is not compensable:

> An employee who travels from home before their regular workday and returns to their home at the end of the workday is engaged in ordinary home to work travel which is a normal incident of employment. This is true whether they work at a fixed location or at different job sites. Normal travel from home to work is not work time.

§ DWD 272.12(2)(g)2. The regulations draw a sharp distinction between this type of travel and travel that is a principal activity (for which an employee earns wages). For example, traveling between jobsites is clearly compensable: "Time spent by an employee in travel as part of their principal activity, such as travel from job site to job site during the workday, must be counted as hours worked." § DWD 272.12(2)(g)5. And if Mr. Kieninger had opted to drive his personal vehicle to a Crown branch, his time spent driving Crown's van between the branch and the jobsites would also unquestionably accrue wages:

> Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the workplace is part of

11

the day's work, and must be counted as hours worked regardless of contract, custom, or practice.

Id.

¶19 However, in an illustration that almost perfectly describes the option Mr. Kieninger actually chose, the DWD says the time spent driving between home and a worksite is not compensable.

> If an employee normally finished their work on the premises at 5 p.m. and is sent to another job which they finish at 8 p.m. and is required to return to their employer's premises arriving at 9 p.m. all of the time is working time. However, if the employee goes home instead of returning to their employer's premises, the travel after 8 p.m. is home-to-work travel and is not hours worked.

Id. Presumably, the same principle applies to travel at the other end of the day. That is, if an employee drives directly from home to a jobsite at the beginning of his shift, he is similarly engaged in non-compensable "home-to-work" travel.

¶20 The only difference between the regulation's illustration and the circumstances of this case is that Crown allows its Technicians to engage in "home-to-work" travel in a company vehicle. Whether the employee is in a personal or a company vehicle, he is doing the exact same thing, and no one disputes that the time at issue would not be compensable if Mr. Kieninger had driven his own automobile. So Mr. Kieninger must explain why the difference in the vehicle's ownership moves his commute time out of the regulation's non-compensable category. The sole distinction he offers is that the vehicle he drives to and from his home carries "tools that are integral and

indispensable to a principal activity."  He cites only Wis. Admin. Code § DWD 272.12(2)(g)5. to explain the significance of this distinction.  But as we describe below, when he quoted the regulation's language he elided the text that demonstrates this provision does not apply to his commute.

¶21 The regulation upon which Mr. Kieninger relies describes a two-leg journey and explains why only the second leg represents compensable travel time.  The first leg comprises travel from the employee's home to a "meeting place" designated by the employer.  The second leg involves travel from the meeting place to the employee's job site.  Mr. Kieninger's understanding of this regulation, however, entirely omits the first leg.  His quote reads as follows:  "Where an employee is required to . . . pick up and to carry tools, the travel from the designated place to the workplace is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice."  The opening clause of that sentence, which identifies the first leg, actually says this:  "Where an employee is required to report at a meeting place . . . ."  Wis. Admin. Code § DWD 272.12(2)(g)5. (emphasis added).  Mr. Kieninger, however, is not required to "report at a meeting place" to pick up and carry tools.  He simply drives from his home to the first jobsite of the day.  So his one-leg commute does not match the two-leg travel described by this part of § DWD 272.12(2)(g)5.

¶22 This regulation actually describes the circumstances of Technicians who, unlike Mr. Kieninger, do not commute in

13

Crown's vans. A Technician who travels from home to a Crown branch to pick up the company vehicle (and its associated tools and parts), is on the first leg of the journey described by Wis. Admin. Code § DWD 272.12(2)(g)5. No wages accrue for this time. However, travel from the Crown branch to the customer's location (the second leg) would be compensable under this provision. Because Mr. Kieninger's commute does not fit this pattern, § DWD 272.12(2)(g)5. does not transform his commute into compensable time.

¶23 So the regulations whittle down Mr. Kieninger's position to this: He must be paid for his commute because the tools in Crown's vans are integral and indispensable to a principal activity, to wit, repairing forklifts.[10] But if bringing along the resources necessary to perform one's job is sufficient to make travel between home and work compensable, his argument proves much too much, and transforms virtually every commute into a wage-earning event. A paralegal who goes home in the evening with a company-provided computer and then travels the next day to a witness's location to conduct an interview is transporting the resources necessary to do his job. So is every office-worker who brings a file home after work, and then returns it the next morning. And, because there is no logical

---

[10] Authority for this proposition does not come from Wis. Admin. Code § DWD 272.12(2)(g)5., but instead from § DWD 272.12(2)(e)1. and § DWD 272.12(2)(e)1.c., which define what is integral and indispensable to a principal activity.

limit to Mr. Kieninger's argument, so too is anyone who merely drives to his regular place of employment each morning. An employee creates value for his employer, of course, by bringing his physical and mental resources to bear on the company's business. So, according to Mr. Kieninger's logic, all employees would have to be paid for their commutes because conveying an employee's physical and mental resources to the office is integral and indispensable to a principal activity, to wit, whatever they were hired to do.

¶24 The tools and parts in Crown's vans may be absolutely necessary for the repair of forklifts, but they are meaningless without a Technician who can expertly manipulate them to the desired end. Mr. Kieninger can say nothing about the indispensability of the tools that could not be said equally of him. So if he is right, if transporting the necessaries to the jobsite makes the travel compensable, then he is entitled to wages regardless of the tools the van carries because no repairs could happen without his personal presence. And that would mean that conveying himself from home to the customer's location is integral or indispensable to the principal activity of repairing forklifts. But according to our statutes and regulations, that simply is not the rule. Wis. Admin. Code § DWD 272.12(2)(g)2. ("Normal travel from home to work is not work time.").

¶25 With these specific, travel-related regulations in mind, we can return to the framework described above. We cannot conclude that conveying company tools from an employee's home to his jobsite, without more, makes his travel time "an integral

15

part of a principal activity" within the meaning of Wis. Admin. Code § DWD 272.12(2)(e)1., or a "closely related" activity that is "indispensable to its performance" within the meaning of § DWD 272.12(2)(e)1.c. To hold otherwise would make every employee's commute a compensable event. Consequently, this travel does not take place during a "workday," as defined by § DWD 272.12(1)(a)2. And that means time spent in travel between home and work in Crown-supplied vehicles does not give rise to "wages earned by [an] employee" as set forth in Wis. Stat. § 109.03(1).

## B. Federal Authorities

¶26 Both Mr. Kieninger and Crown tell us we must construe our regulations consistently with federal authorities. But they direct us to different sources. Mr. Kieninger prefers opinions of federal courts construing the pre-ECFA Fair Labor Standards Act (the "FLSA"). He says these cases——and regulations identical to our own——teach that his type of commute is compensable. Crown, on the other hand, says we can dispense with those federal opinions because they have all been superseded by the ECFA. We should read that act, Crown says, as a clarification of the FLSA and the regulations relating to commuting time. And because our regulations mimic their federal counterparts, Crown concludes that this clarification necessarily clarifies our regulations, too. We will begin with the federal opinions on which Mr. Kieninger relies.

¶27 It is true that one federal court (of which we are aware) has arrived at a conclusion contrary to the one we reach

16

today. We do not take this lightly——the federal judiciary can, and often does, provide helpful insights when it analyzes federal provisions analogous to our own. Luckett v. Bodner, 2009 WI 68, ¶29, 318 Wis. 2d 423, 769 N.W.2d 504 ("When 'a state rule mirrors the federal rule, we consider federal cases interpreting the rule to be persuasive authority.'"); see also State v. Leach, 124 Wis. 2d 648, 670, 370 N.W.2d 240 (1985). They may not, of course, make any binding pronouncements on the meaning of Wisconsin's laws. Daanen & Janssen, Inc. v. Cedarapids, Inc., 216 Wis. 2d 395, 400, 573 N.W.2d 842 (1998) ("This court is not bound by a federal court's interpretation of Wisconsin law."). Much less may their opinions construing analogous federal provisions control a state's understanding of its own statutes and regulations. We have considered the opinions of our federal counterparts on this question, but for the following reasons we are not persuaded they should direct our analysis.

¶28 We need not spend much time on the federal court of appeals opinions Mr. Kieninger brought to our attention because none of them addressed the question we must answer. They considered the compensability of travel between an employer's location and various job sites, not the time spent traveling from an employee's home to a jobsite. That's a closely related question, but it is not the same. For example, D A & S Oil Well Servicing, Inc. v. Mitchell, 262 F.2d 552, 555 (10th Cir. 1958), involved an employer who compensated employees for travel between its base of operations and jobsites, but not the return

17

trip to the base. The court concluded the employer must pay for both. Id. But it never mentioned travel between the employee's home and the employer's base. In Crenshaw v. Quarles Drilling Corp., 798 F.2d 1345, 1350 (10th Cir. 1986), the employer sent the employee to jobsites across several states. The court was silent with respect to whether the travel occurred between the employee's home and one of the far-flung locations. But it based its conclusion on the rationale it previously expressed in D A & S Oil Well Servicing, which applied to travel between an employer's location and a jobsite. As with the employees in D A & S Oil Well Servicing, the employee in Secretary of Labor v. E. R. Field, Inc., 495 F.2d 749, 751 (1st Cir. 1974), sought compensation for travel between his employer's business location and a remote jobsite. The court concluded the time was compensable, but said nothing about traveling between an employee's home and a jobsite.[11]

¶29 One of the federal district courts cited by Mr. Kieninger actually has addressed the question before us, and it does disagree with our conclusion. However, its analysis failed

---

[11] Similarly, many of the federal district court cases Mr. Kieninger cited addressed themselves to the question of whether travel between an employer's location and a jobsite is compensable, not the time between home and a jobsite. McLaughlin v. Somnograph, Inc., No. Civ.A.04-1274-MLB, 2005 WL 3489507 (D. Kan. Dec. 21, 2005); Dole v. Enduro Plumbing, Inc., No. 88-7041-RMT(KX), 1990 WL 252270 (C.D. Cal. Oct. 16, 1990); Marshall v. Boyd, No. LR-C-7-4, 1979 WL 1922 (E.D. Ark. April 4, 1979); Spencer v. Auditor of Public Accounts, No. 88-54, 1990 WL 8034, (E.D. Ky. Jan. 30, 1990).

18

to account for regulatory material directly bearing on this issue, and so it provides an unsure foundation upon which to base our reasoning. The plaintiffs in <u>Baker v. GTE North, Inc.</u> presented exactly the same issue as Mr. Kieninger——the compensability of their travel time between home and a jobsite while carrying the tools necessary to do their jobs. The court said the commuting time was compensable because "driving is principal if it is done 'as part of the regular work of the employees in the ordinary course of business,' and is 'necessary to the business and is performed by the employees, primarily for the benefit of the employer, in the ordinary course of that business.'" 927 F. Supp. 1104, 1114 (N.D. Ind. 1996) (quoting <u>Dunlop v. City Elec., Inc.</u>, 527 F.2d 394, 400-401 (5th Cir. 1976)), <u>rev'd on other grounds</u>, 110 F.3d 28 (7th Cir. 1997). But <u>Dunlop</u> is not the only authority the <u>Baker</u> court should have consulted. A pertinent federal regulation provided:

> Time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked. Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice. If an employee normally finishes his work on the premises at 5 p.m. and is sent to another job which he finishes at 8 p.m. and is required to return to his employer's premises arriving at 9 p.m., all of the time is working time. However, if the employee goes home instead of returning to his employer's premises, the travel after 8 p.m. is home-to-work travel and is not hours worked.

19

29 C.F.R. § 785.38. This is virtually identical to Wis. Admin. Code § DWD 272.12(2)(g)5., the regulation that was the main driver of our analysis. That it is identical should come as no surprise, inasmuch as it was, apparently, the genesis of Wisconsin's own regulation.[12] What does come as a surprise is that not only did it not find a central place in the analysis, the court never even mentioned it.

¶30 By failing to distinguish between home-to-jobsite travel on the one hand, and on the other home-to-employer-to-jobsite travel, the Baker court adopted (perhaps unknowingly) the logically-unlimited argument Mr. Kieninger offered here. It concluded that carrying the tools necessary to perform the employee's work made the travel an "integral and indispensable" part of the employee's principal activity.[13] But because conveying the employee himself to the jobsite is no less necessary to perform his work, the Baker court's logic would make the employees' commute compensable even if they transported nothing but themselves. The antidote to this argument, at the federal level, is 29 C.F.R. § 785.38. If the court had accounted for its provisions, as we did in assessing Wis. Admin. Code § DWD 272.12(2)(g)5., it may have recognized the unintended

---

[12] The federal regulation (29 C.F.R. § 785.38) was adopted in 1961. See 26 Fed. Reg. 194 (Jan. 11, 1961) (to be codified at 29 C.F.R. § 785.38). Wisconsin adopted its counterpart (§ DWD 272.12(2)(g)5.) over 17 years later. 271B Wis. Admin. Reg. 32-4 (July 31, 1978).

[13] See supra note 11.

consequences of its reasoning. We are not persuaded by <u>Baker v. GTE North, Inc.</u>

¶31 Crown, on the other hand, says all federal cases addressing commuting time prior to 1996 are no longer controlling. Instead, it proposes we follow its somewhat labyrinthine argument to the conclusion that Congressional adoption of the ECFA in 1996 controls the disposition of this case. We can certainly understand why Crown believes it should——the ECFA's text gives its position a nice assist. That Act provides:

> [T]he use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employer's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

29 U.S.C. § 254(a). But Crown's argument depends on the unusual assertion that a Congressional act post-dating Wisconsin's labor regulations can somehow retroactively change their meaning.[14] It says the high degree of correlation between Wisconsin and federal labor regulations (at least with respect

---

[14] The provision at issue here, Wis. Admin. Code § DWD 272.12, was originally adopted in 1978 as Wis. Admin. Code § Ind 72.12. <u>See</u> Wisconsin Department of Workforce Development Timeline History: 1883-Present, https://dwd.wisconsin.gov/dwd/dwdhistory/.

21

to the compensability of commuting time) demonstrates that the DWD intended our regulations on this subject to always move in lockstep with their federal analogs. Inasmuch as the DWD has not adopted something similar to the ECFA, Crown's argument depends on this movement occurring even without any state-level rule-making activity. There are circumstances in which the DWD may wish our laws to track federal law; it said as much when it adopted exemptions to overtime pay requirements. See Wis. Admin. Code § DWD 274.04 ("[T]hese exemptions shall be interpreted in such a manner as to be consistent with the Federal Fair Labor Standards Act and the Code of Federal Regulations as amended . . . .").[15] However, there is no

---

[15] In construing Wis. Admin. Code § DWD 274.04, the court of appeals said in Madely v. Radioshack Corp., 2007 WI App 244, ¶13, 306 Wis. 2d 312, 742 N.W.2d 559, that "Wisconsin's administrative regulations are to be interpreted in such a manner as to be consistent with the Federal Fair Labor Standards Act (FLSA) and the Code of Federal Regulations . . . ." But in a subsequent case, it acknowledged that "we do not read Madely as standing for the proposition that all Wisconsin administrative regulations must be interpreted in lock step with the FLSA and the CFR." Weissman v. Tyson Prepared Foods, Inc., 2013 WI App 109, ¶44, 350 Wis. 2d 380, 838 N.W.2d 502). Instead, Madely's statement was inspired by the text of § DWD 274.04:

> [T]he code provision at issue in Madely explicitly directed interpretation "consistent with the [FLSA] and the [CFR] as amended." This significant "lock step" directive, lacking in the code provisions at issue here, appears to be the basis for our statement in Madely that Wisconsin's administrative regulations are to be interpreted consistent with the FLSA and the CFR.

Id. (Brackets in original.).

22

corresponding linkage between § DWD 272 and the FLSA or the CFRs, or any other federal law. We will not create one. Consequently, the ECFA plays no part in our analysis of this case.[16]

\*

¶32 Our holding is limited, and applies only to circumstances in which an employee drives a company-provided vehicle between home and a jobsite. It does not disturb the compensability of travel between an employer's location and a jobsite, or between jobsites. See Wis. Admin. Code § DWD 272.12(2)(g)5. ("Time spent by an employee in travel . . . from job site to job site during the workday, must be counted as hours worked. Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the

---

[16] Our analysis would be different, of course, if the ECFA had explicitly or by necessary implication pre-empted a relevant part of Wisconsin's law. The Supremacy Clause of the United States Constitution ensures that federal law takes precedence over contrary state provisions:

> Article VI, cl. 2, of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." Consistent with that command, we have long recognized that state laws that conflict with federal law are "without effect."

Altria Grp., Inc. v. Good, 555 U.S. 70, 76 (2008).

designated place to the workplace is part of the day's work . . . .").

## IV. CONCLUSION

¶33 We hold that neither Wis. Stat. § 109.03(1) nor DWD's related regulations require Crown to pay an employee for the time he spends driving a tool-laden, company-provided vehicle between his home and an assigned jobsite. Therefore, we reverse the court of appeals.[17]

*By the Court.*—The decision of the court of appeals is reversed.

---

[17] The court of appeals rejected Crown's reliance on the ECFA for guidance in interpreting Wisconsin's statutes, and so reversed the circuit court's judgment. However, it also said "we lack sufficient adversarial briefing on the correct Wisconsin standard and, additionally, we are uncertain whether under the correct standard there might be one or more genuine issues of material fact." Kieninger, No. 2017AP631, unpublished slip op., ¶3. So it remanded the matter for further briefing.

Neither party has asserted (in this court) that it wants an opportunity to submit additional briefing on this subject, and we see no such need. Nor have they suggested to us that there is any genuine dispute as to a material fact. That is consistent with their cross-motions for summary judgment in the circuit court, in which they originally asserted this case presents no genuine dispute as to a material fact. We conclude, therefore, that there is no reason to remand this matter for further proceedings.