# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

| | |
|---|---|
| Case No.: | 2018AP1114 |

Complete Title of Case:

CHRISTUS LUTHERAN CHURCH OF APPLETON,

PLAINTIFF-APPELLANT,

V.

WISCONSIN DEPARTMENT OF TRANSPORTATION,

DEFENDANT-RESPONDENT.

| | |
|---|---|
| Opinion Filed: | November 26, 2019 |
| Submitted on Briefs: | |
| Oral Argument: | June 25, 2019 |

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Seidl, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Alan Marcuvitz* and *Nicholas Boerke* of *von BRIESEN & ROPER, S.C.*, Milwaukee. There was oral argument by Alan Marcuvitz. |
| Respondent ATTORNEYS: | On behalf of the defendant-respondent, the cause was submitted on the brief of *Brad D. Schimel*, attorney general, and *Maura FJ Whelan*, assistant attorney general. There was oral argument by Maura FJ Whelan. |

COURT OF APPEALS
DECISION
DATED AND FILED

November 26, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP1114**

**STATE OF WISCONSIN**

Cir. Ct. No. 2017CV452

**IN COURT OF APPEALS**

CHRISTUS LUTHERAN CHURCH OF APPLETON,

    PLAINTIFF-APPELLANT,

V.

WISCONSIN DEPARTMENT OF TRANSPORTATION,

    DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Outagamie County: CARRIE A. SCHNEIDER, Judge. *Reversed and cause remanded for further proceedings*.

Before Stark, P.J., Hruz and Seidl, JJ.

¶1 HRUZ, J. State law requires that when a governmental entity wishes to condemn property for transportation use, it must issue to the property owner a jurisdictional offer that is based on an appraisal. *See* WIS. STAT.

§ 32.05(2)(b), (3)(e) (2017-18).[1]  Christus Lutheran Church of Appleton challenges the validity of the jurisdictional offer the Wisconsin Department of Transportation (DOT) made for its property.  The DOT's offer was approximately $270,000 more than the property value stated in an appraisal submitted by the DOT in support of the offer, and the offer also included items (such as severance damages) that were not included in the appraisal.  Although Christus Lutheran would benefit monetarily from the increased jurisdictional offer, it contends the DOT could not condemn its property at this time because there was an insufficient nexus between the jurisdictional offer and the appraisal.

¶2    We conclude the jurisdictional offer in this case was not sufficiently based on the appraisal.  The appraisal must value "all property proposed to be acquired," WIS. STAT. § 32.05(2)(a), and it must form a "fundamental ingredient" or "supporting part" of the jurisdictional offer, **Otterstatter v. City of Watertown**, 2017 WI App 76, ¶24, 378 Wis. 2d 697, 904 N.W.2d 396.  In this case, the third-party appraisal concluded that no severance damages would occur as a result of the project, yet the DOT's jurisdictional offer included a $159,574 line item for such damages.  Given that just compensation for a taking includes applicable severance damages, *see* WIS. STAT. § 32.09(6)(e), the appraisal failed to satisfy subsec. (2)(a)'s "all property" requirement.  As a result, the jurisdictional offer's line item for severance damages found no support in the appraisal, and the offer was invalid under subsecs. (2)(b) and (3)(e).  We therefore reverse the order

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

2

granting summary judgment to the DOT and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶3    Christus Lutheran is a non-profit entity that owns and operates Christus Lutheran Church, located in Greenville, Wisconsin. The church abuts State Trunk Highway 15, which the DOT endeavors to reconstruct and expand. In October 2016, a DOT representative notified Christus Lutheran that it would require 5.87 acres of Christus Lutheran's land for the highway project, as well as temporary easement rights over another .198 acres. In the letter the DOT sent to initiate negotiations, the DOT stated it valued the land to be acquired at $79,245 and the easement rights at $921. Together with compensation for the loss of various site improvements, the DOT estimated the fair market value of the property to be acquired at $133,400, and it provided Christus Lutheran with the forms necessary to accept an offer in that amount.[2] Notably, the initial offer letter did not identify severance damages as a line item for compensation.

¶4    The DOT attached to its initial offer letter an appraisal prepared on August 8, 2016, by an outside appraiser, Single Source, Inc.[3] The appraisal's analysis of land sales indicated the land to be acquired in fee should be valued at $13,500 per acre, for a total of $79,245. The appraisal reached a valuation of $921 for the temporary easement rights based on commercial land rents, and it

---

[2] The property to be acquired included outdoor areas associated with the use of the church, including parking spaces, a sidewalk, signs, a light pole, and a pond.

[3] The DOT has represented that it does use in-house appraisers for some projects.

estimated the value of site improvements to the property at $53,100. The appraisal explicitly considered the issue of severance damages, which it defined as "the loss in value to the portion of the larger parcel remaining after the taking and construction of the public improvement." It concluded that no severance damages would occur as a result of the highway project.

¶5      After receiving the DOT's initial offer, Christus Lutheran requested an electronic copy of the appraisal, which the DOT provided. The parties exchanged a few other communications in October 2016, after which Christus Lutheran notified the DOT that it had retained an attorney to assist in the negotiations. Although Christus Lutheran was advised of its statutory right to request a second appraisal at government expense, it did not seek such an appraisal. It does not appear the parties engaged in any meaningful negotiation regarding the Single Source appraisal or the amount of the DOT's initial offer, nor does it appear that Christus Lutheran suggested the amount of the initial offer was inadequate or proposed a different value that would fairly compensate it for the taking. Eventually, in January 2017, Christus Lutheran's attorney advised the DOT that the congregation would not authorize a sale and that the DOT should proceed to acquire the property it needed by eminent domain.

¶6      After being notified of Christus Lutheran's decision, DOT officials reviewed the initial offer internally through the Department's administrative review process.[4] The DOT determined the acquisition was more complex than

---

[4] According to a DOT official involved with the acquisition, the administrative review process involves obtaining additional estimates and information, which are provided to the landowner upon request. Increases to the initial offer of more than $250,000, such as here, require the approval of the chief real estate official in the DOT's central office.

initially believed and involved additional impacts to the church's pond, parking lot, signs and landscaping, as well as severance issues regarding the church building. Accordingly, the DOT determined that a higher offer was warranted. The DOT contacted Christus Lutheran while preparing the revised offer and discussed some aspects of the project, including the need for Christus Lutheran to replace lost parking and construct a retention pond. In mid-February 2017, while the DOT was preparing its revised offer, Christus Lutheran's attorney advised the DOT that it should proceed with condemnation, as there was no consensus from the congregation and the church council on the DOT's acquisition.

¶7 On March 24, 2017, the DOT sent Christus Lutheran a revised offer of $403,200. Among other things, the revised offer increased the per-acre value of the land by a total of $14,675; added $75,321 for Christus Lutheran to remedy the resulting parking lot impacts and construct a retention pond; and awarded $159,574 as severance damages based upon the proximity of the church structure to the new right of way. The table below, which was included in the DOT's letter, shows the differences between its October 2016 offer and its revised March 2017 offer:

| Allocation | Description | Size | Unit | Appraisal offer $13,500/ac | Revised offer $16,000/ac |
|---|---|---|---|---|---|
| Land | Fee Acquisition | 5.870 | Acres | $79,245.00 | $93,920.00 |
| Temporary Limited Easement (TLE) | Temporary Limited Easement | 0.198 | Acres | $921.00 | $1,089.00 |
| Access Rights | Access to STH 15 | | | $0.00 | $0.00 |
| Site Improvements | Monument Sign | | | $8,400.00 | $8,400.00 |
| Site Improvements | Small Directional Sign | | | $558.00 | $558.00 |
| Site Improvements | Landscaping Contributory Value Including Pond | | | $12,420.00 | $30,495.00 |
| Site Improvements | Acquired Paved Parking | | | $27,690.00 | $29,820.00 |
| Site Improvements | Parking Space Restriping within the TLE Area | | | $150.00 | $150.00 |
| Site Improvements | Acquired Concrete Sidewalk | | | $1,288.00 | $1,288.00 |
| Site Improvements | Parking Lot Floodlight | | | $2,530.00 | $2,530.00 |
| Site Improvements | Retention Pond | | | | $45,000.00 |
| Cost to Cure | Parking Area | | | | $30,321.00 |
| Severance | Proximity of right of way | | | | $159,574.00 |
| Appraiser Rounding | | | | $198.00 | $55.00 |
| | Total Allocation | | | $133,400.00 | $403,200.00 |

¶8    After internally discussing the revised offer, Christus Lutheran again informed the DOT it should proceed with the acquisition by eminent domain. The DOT responded on April 11, 2017, with a jurisdictional offer of $403,200. The DOT allocated that amount as follows: (1) $242,537 for loss of land, including fixtures and improvements being acquired; (2) $159,574 for damages resulting from severance of land, including proximity damage to improvements remaining on the condemnee's land; and (3) $1,089 as compensation for a temporary limited easement.

¶9    As of May 1, 2017, the DOT had not received a response to the jurisdictional offer. On May 9, the DOT notified the Outagamie County Register of Deeds of the award of damages and sent Christus Lutheran a closing letter along with a check, a closing statement, and a copy of the award of damages. Christus Lutheran, represented by a new attorney, subsequently sought to reopen negotiations with the DOT, but he was told it was too late. The property transfer to the DOT was recorded on May 24.[5]

¶10   Christus Lutheran filed the present action on May 15, 2017. It alleged the DOT "failed to provide any appraisal that forms the basis for, or supports, the $403,200 compensation amount contained in the Jurisdictional Offer." Christus Lutheran argued that this failure violated WIS. STAT. § 32.05(2)(b) and (3)(e), as those provisions had been interpreted in *Otterstatter*. As relief, Christus Lutheran sought a judgment declaring the jurisdictional offer

---

[5] This court ordered oral argument, which was held on June 25, 2019. At the oral argument, Christus Lutheran represented that no substantial construction work had begun on the highway project. The DOT did not dispute this assertion.

void, an injunction prohibiting the DOT from attempting to acquire title to, or possession of, any interest via condemnation until it had complied with § 32.05, and an order allowing Christus Lutheran to recover its costs and attorney fees.

¶11 The parties filed cross-motions for summary judgment. Relying on *Otterstatter*, Christus Lutheran argued the appraisal the DOT obtained did not form a "supporting part" or a "fundamental ingredient" of the jurisdictional offer because the offer included new line items of damages not included in the appraisal. Christus Lutheran also argued the DOT had "completely abandoned" the appraisal by deviating so significantly from the amount of its initial offer. In Christus Lutheran's view, the increased offer was the result of the DOT attempting to "avoid having to pay litigation expenses and to essentially mitigate their damages … because they realized they dropped the ball on this appraisal."[6]

¶12 In response, the DOT observed that most of the values contained in the initial offer and in the jurisdictional offer were identical or similar. For the new line items, the DOT argued that it was permissible for it to conduct an administrative revision of the initial offer to include items that had not been considered by the appraiser. Indeed, the DOT argued such a process favored landowners, as "[t]he fact that the first appraiser chose not to value certain items should not tie the [DOT] to an inequitably low value for the landowner." The DOT argued such adjustments were at least implicitly contemplated by the legislature, in the sense that the DOT is statutorily required to attempt to negotiate

---

[6] *See generally* WIS. STAT. § 32.28 (regarding litigation expenses and costs).

with landowners and landowners may request a second appraisal at government expense.

¶13    The circuit court issued a written decision granting the DOT's summary judgment motion and denying Christus Lutheran's summary judgment motion.  The court concluded the appraisal "can be considered a 'supporting part' of the [jurisdictional] offer" under *Otterstatter* because the "core line items"—primarily the land acquisition and the temporary limited easement—were similar in value.  As to the additional line items included in the jurisdictional offer, the court determined that the statute provided an opportunity for negotiation and further appraisals of which Christus Lutheran had failed to take advantage.  Based on the affidavits, it also concluded that DOT officials had sufficient expertise to revise the appraisal.  Christus Lutheran now appeals.

## DISCUSSION

¶14    We review a grant of summary judgment de novo.[7] *Otterstatter*, 378 Wis. 2d 697, ¶19.  Summary judgment is appropriate if the record demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  WIS. STAT. § 802.08(2).  When reviewing a grant of summary judgment, we follow a well-established methodology in which we first examine the pleadings to determine whether a claim has been stated. *Kieninger v. Crown Equip. Corp.*, 2019 WI 27, ¶11, 386 Wis. 2d 1, 924 N.W.2d 172.  If so, we then analyze whether any factual issues exist for trial. *Id.*

---

[7] To the extent Christus Lutheran suggests the "clearly erroneous" standard of review is applicable, we perceive no basis for applying that standard here, and Christus Lutheran does not appear to apply that standard anywhere in its brief.

¶15     The central issue in this case is whether the DOT's jurisdictional offer satisfied the statutory requirements.  As such, this case presents an issue of statutory interpretation, which is a question of law that we review de novo.  *Otterstatter*, 378 Wis. 2d 697, ¶20.  The purpose of statutory interpretation is to discern the legislature's intent.  *Id.*  We will give statutory language its common, ordinary and accepted meaning, except technical or specially defined words will be given those respective meanings.  *Id.* (citation omitted).  Further, we interpret statutory language in the context in which it is used, in relation to the language of surrounding or closely related statutes, and in a reasonable manner to avoid absurd or unreasonable results.  *Id.*

¶16     The parties find common ground on the basic condemnation standards applicable to this case.  Condemnations for transportation facilities are governed by WIS. STAT. § 32.05.  The statutes governing the condemnation process are in derogation of the common law and therefore are strictly construed.  *City of Racine v. Bassinger*, 163 Wis. 2d 1029, 1037, 473 N.W.2d 526 (Ct. App. 1991).  Accordingly, strict adherence to such statutes is required, and we may not impose additional requirements that are not reflected by the statutory language.  *Id.*  Statutory provisions that favor the owner, such as those that regulate the compensation to be paid to him or her, are to be afforded a liberal construction.  *Standard Theaters, Inc. v. DOT*, 118 Wis. 2d 730, 742-43, 349 N.W.2d 661 (1984).  These rules are a reflection of the extraordinary nature of the government's eminent domain power.  *TFJ Nominee Tr. v. DOT*, 2001 WI App 116, ¶10, 244 Wis. 2d 242, 629 N.W.2d 57.

¶17     To place in context the requirement that a jurisdictional offer be based upon an appraisal, we briefly review the statutory process governing condemnations for transportation use.  Under WIS. STAT. § 32.05(2)(a), a

9

condemnor is required to "cause at least one, or more in the condemnor's discretion," appraisal to be made of "all property proposed to be acquired." The condemnor shall confer with the landowner when making the appraisal, if reasonably possible. *Id.* Subsection (2)(b) requires the condemnor to "provide the owner with a full narrative appraisal upon which the jurisdictional offer is based and a copy of any other appraisal made under par. (a)." Subsection (2)(b) also requires the condemnor to inform the landowner of his or her right to obtain a second appraisal at government expense.

¶18 The completion of the appraisal triggers the condemnor's obligation to attempt to engage the property owner in negotiations regarding the acquisition of the property. WIS. STAT. § 32.05(2a). The statute permits the condemnor to "contract to pay the items of compensation enumerated" in WIS. STAT. §§ 32.09 (defining the elements of "just compensation") and 32.19 (governing relocation payments). Attempted negotiation on the part of the condemnor is a jurisdictional requirement to proceed with the condemnation. *Arrowhead Farms, Inc. v. Dodge Cty.*, 21 Wis. 2d 647, 652, 124 N.W.2d 631 (1963).

¶19 If negotiations fail to produce a voluntary sale, the government may initiate formal condemnation proceedings by sending the property owner a jurisdictional offer to purchase the property. WIS. STAT. § 32.05(3). Subsection (3) requires that the offer be sent in the form of a notice that includes several enumerated items, including a statement "that the appraisal or one of the appraisals of the property on which condemnor's offer is based is available for inspection at a specified place by persons having an interest in the lands sought to be acquired." Sec 32.05(3)(e). It is this requirement, together with a similar requirement under subsec. (2)(b) and the subsec. (2)(a) requirement that the

appraisal value "all property proposed to be acquired," that gives rise to the present dispute.[8]

¶20    The dispute between Christus Lutheran and the DOT regarding the interaction between the appraisal and jurisdictional offer requirements was foreshadowed by *Otterstatter*, which also involved a jurisdictional offer that was higher than an appraisal.  In *Otterstatter*, the City of Watertown acquired Otterstatter's property by eminent domain pursuant to a jurisdictional offer for $270,000, which was $30,000 more than the value reflected in an appraisal that the City had obtained.  *Otterstatter*, 378 Wis. 2d 697, ¶¶1, 5-8.  Otterstatter brought suit under WIS. STAT. § 32.05(5), asserting the jurisdictional offer was not "based upon an appraisal," contrary to subsecs. (2)(b) and (3)(e).  *Otterstatter*, 378 Wis. 2d 697, ¶¶2, 10.  The circuit court granted the City's motion for summary judgment and dismissed Otterstatter's complaint.  *Id.*, ¶14.

---

[8] Although this case concerns only the validity of the jurisdictional offer, for the sake of completeness we note that several things can happen once the jurisdictional offer is issued.  A voluntary sale is still possible; the condemnee may accept the jurisdictional offer within twenty days.  WIS. STAT. § 32.05(6).  If the jurisdictional offer is not accepted, the condemnor may make an award of damages and acquire the property, as specified in subsec. (7).  A property owner who believes the award of damages is inadequate may challenge the amount of compensation within two years from the date of the taking.  Sec. 32.05(9).  The matter may be tried by the circuit court or by a panel of county condemnation commissioners, but the sole issues to be tried using this procedure are questions of title and the amount of just compensation to be paid by the condemnor.

Alternatively, within forty days after service of the jurisdictional offer, the property owner may commence an action challenging the right of the condemnor to condemn the property. *See* WIS. STAT. § 32.05(5).  Such a challenge—which is what occurred here—is "the only manner in which any issue other than the amount of just compensation, or other than proceedings to perfect title … may be raised pertaining to the condemnation of the property described in the jurisdictional offer." *Id.*

¶21 This court affirmed that determination on appeal, concluding that the combination of WIS. STAT. § 32.05(2)(b) and (3)(e) created a requirement that a jurisdictional offer be "based upon" the appraisal. *Otterstatter*, 378 Wis. 2d 697, ¶¶22, 24. Citing a dictionary definition of the term "base," the court concluded "that the appraisal must be a supporting part or fundamental ingredient of the jurisdictional offer." *Id.*, ¶24. Otterstatter failed to show "that the $30,000 increase deviated so substantially from the $240,000 appraisal that the appraisal can no longer be said to be a supporting part or fundamental ingredient of the $270,000 jurisdictional offer." *Id.*, ¶25.

¶22 In rejecting Otterstatter's arguments, the court articulated principles that are relevant to the parties' arguments here. First, there is no statutory requirement that the jurisdictional offer must equal the appraisal.[9] *Id.*, ¶¶27-28. Second, a jurisdictional offer is valid even if there is little or no actual negotiation between the parties following the appraisal, and even if the condemnor decides to submit a higher jurisdictional offer merely to avoid later paying the condemnee's litigation expenses pursuant to the fee-shifting provisions of WIS. STAT. § 32.28. *Otterstatter*, 378 Wis. 2d 697, ¶¶29-30. Finally, WIS. STAT. § 32.05(2) does not require a recent appraisal; there is no statutory basis to conclude "that an appraisal cannot serve as the basis for a jurisdictional offer because it is too old." *Otterstatter*, 378 Wis. 2d 697, ¶34.

---

[9] Indeed, the court remarked that imposing a matching requirement would run contrary to the legislature's clear intent in adopting the negotiation process as part of the statute. *Otterstatter v. City of Watertown*, 2017 WI App 76, ¶28, 378 Wis. 2d 697, 904 N.W.2d 396. Based upon that contemplated negotiation process, the court concluded the City "was not required to stick with its initial offer based on its appraisal, but rather was required to negotiate to see if that number was too low." *Id.*

¶23    Based on the statutory provisions, as interpreted in ***Otterstatter***, Christus Lutheran argues the jurisdictional offer in this case was deficient. Its argument is, in part, based on the difference in the amounts of the appraisal and the jurisdictional offer. Specifically, Christus Lutheran argues ***Otterstatter***—which approved a jurisdictional offer that was 12.5% higher than the appraisal—cannot be read to allow the jurisdictional offer in this case, which was more than three times the amount of the appraisal.[10]    In Christus Lutheran's view, the difference in amounts between the appraisal and jurisdictional offer here demonstrates the appraisal was not a "supporting part or fundamental ingredient" of the offer.

¶24    Ultimately, we need not address whether an appraisal that values a property at approximately $270,000 less than a $403,200 jurisdictional offer constitutes a "fundamental ingredient" or "supporting part" of the jurisdictional

---

[10] Christus Lutheran's argument in this regard finds some support in the ***Otterstatter*** opinion, which discussed a more extreme hypothetical than the facts presented here. In a footnote in that opinion, the court stated:

> Otterstatter makes a "slippery slope" argument, namely, that concluding that the jurisdictional offer was "based" "upon" the appraisal here would mean that a $100,000 jurisdictional offer could be based on a $1,000 appraisal. We are not persuaded. A jurisdictional offer that is $30,000 more than a $240,000 appraisal cannot rationally be compared to an offer that is 100 times greater than the appraisal. While it may be difficult to imagine a circumstance in which an offer that is 100 times greater than an appraisal valuation could be "based" "upon" that valuation, those are not the facts here.

***Otterstatter***, 378 Wis. 2d 697, ¶25 n.7. Thus, ***Otterstatter*** appears to suggest that there is some point at which a jurisdictional offer becomes unmoored from an appraisal based solely upon a difference in dollar values, but the court did not offer any guidance as to when that line is crossed beyond the facts of that case. As we explain, we need not reach that issue here because the jurisdictional offer and appraisal are flawed for a more basic reason.

offer based solely upon the variance in the dollar amounts of those valuations. The jurisdictional offer here fails for a more basic reason—namely, the DOT failed to obtain an appraisal that valued "all property proposed to be acquired," contrary to WIS. STAT. § 32.05(2)(a). As a result, the DOT failed to comply with the joint requirement under subsecs. (2)(b) and (3)(e) that the DOT provide the property owner with an appraisal upon which the jurisdictional offer is based.

¶25 To explain, the appraisal in this case omitted a significant item of damages that was subsequently included in the jurisdictional offer. The appraisal stated that no severance damages to the remainder of Christus Lutheran's property were to occur as a result of the highway project.[11] The appraisal appears to have considered and specifically rejected the possibility that any such damages would occur:

> The church market is very small in Wisconsin due to the special use nature of the property. We have researched church sales in the market and could not delineate any type of proximity damage to improvements based on available market information. Due to the lack of relevant sales and few market participants we were unable to determine any severance damages to church properties based on proximity damages. Therefore, we have determined that no severance damages are caused by the closer proximity to the State Trunk Highway 15 right of way in the after condition.

---

[11] We recognize that the jurisdictional offer also includes new line items for the value of a retention pond and the cost to cure the parking area. Aside from Christus Lutheran's arguments regarding the total values reflected in the appraisal as compared to the jurisdictional offer, the parties have not focused individually on the addition of these line items of damages, nor has Christus Lutheran directly argued their inclusion constitutes a violation of the WIS. STAT. § 32.05(2)(a) "all property" requirement. Accordingly, we decline to further address those two line items, and we focus our discussion on the issue of severance damages.

14

The DOT nonetheless included a $159,574 line item for severance damages in the jurisdictional offer. According to the affidavit of a DOT official who worked on the condemnation, this line item was added on the DOT's own initiative. There was no basis in the appraisal for the DOT's subsequent decision to add severance damages in the jurisdictional offer.

¶26    The lack of substantiation for a new item of damages in the jurisdictional offer is problematic because the condemnation statutes plainly endeavor to provide the property owner with transparency regarding the condemnation process. A property owner must be provided with the full narrative appraisal, *see* WIS. STAT. § 32.05(2)(b), and the jurisdictional offer must notify the property owner where he or she can review "the appraisal or one of the appraisals of the property on which condemnor's offer is based," subsec. (3)(e). The DOT was questioned at oral argument as to how a property owner would know a jurisdictional offer was "fair" if one of the most significant items of compensation had never been appraised and it was unclear to the property owner how the value of that interest was calculated.[12] No satisfactory answer was forthcoming.

¶27    Instead, the DOT proposed at oral argument that an appraisal satisfies the ***Otterstatter*** standards when it values all of the real property interests to be taken. In other words, the DOT's position is that the appraisal here was sufficient because it valued the fee and lesser property interests that the government was actually acquiring; the DOT views severance damages as a type

---

[12] The DOT has noted repeatedly that a property owner may obtain a second appraisal at government cost. *See* WIS. STAT. § 32.05(2)(b). While that is true, it is undisputed that this is not a requirement. Rather, a property owner may elect or not elect to obtain a second appraisal as he or she sees fit.

of "ancillary" damage to the remainder property that occurs only as a result of the taking of the other property. The DOT argues that such ancillary damages have a logical nexus to the real property interests taken in the sense that, but for the taking of other property, there would be no ancillary damage to the remainder property. Thus, the DOT asserts it was good enough that the appraisal valued the real property interests to be taken and did not include severance damages, which the DOT could later add on its own initiative.

¶28    We cannot accept the DOT's construction of the statutory appraisal requirement, as it ignores a critical goal of the condemnation process and important statutory provisions aimed at protecting property owners. When the government takes private property for public use, it must pay the property owner just compensation. WIS. CONST. art. I, § 13. Just compensation consists of the "loss incurred by the property owner as a result of the taking." *Wisconsin Retired Teachers Ass'n, Inc. v. Employee Tr. Funds Bd.*, 207 Wis. 2d 1, 30, 558 N.W.2d 83 (1997). When the government condemns property for public use, it must act in conformity with Chapter 32 of the Wisconsin Statutes, including WIS. STAT. § 32.09, which sets forth the rules governing the determination of just compensation. *See Brenner v. New Richmond Reg'l Airport Comm'n*, 2012 WI 98, ¶40, 343 Wis. 2d 320, 816 N.W.2d 291.

¶29    As relevant here, WIS. STAT. § 32.09(6) describes how to value property in the case of a partial taking of property other than an easement. Under subsec. (6), the compensation paid by the condemnor is the greater value of either: (1) the fair market value of the property taken; or (2) the "before and after" value of the remaining property. *See also Justmann v. Portage Cty.*, 2005 WI App 9, ¶¶5, 9, 278 Wis. 2d 487, 692 N.W.2d 273 (2004). Both the appraisal and the jurisdictional offer in this case appear to use the "before and after" approach to

16

valuing Christus Lutheran's property.[13] "Before and after" value is determined by subtracting the fair market value of the condemnee's remaining property from the fair market value of the condemnee's total property prior to the condemnation. *Id.*, ¶5.

¶30     In determining the "before and after" value in the context of a partial taking, the condemnor must "giv[e] effect, without allowance of offset for general benefits," to several enumerated items of loss or damage, as applicable.  Severance damages are one such item under WIS. STAT. § 32.09(6)(e).  Subsection (6)(e) states that the owner is entitled to "[d]amages resulting from actual severance of land including damages resulting from severance of improvements or fixtures and proximity damage to improvements remaining on condemnee's land."[14]

¶31     By virtue of its jurisdictional offer, the DOT concluded that "just compensation" to Christus Lutheran included an award of severance damages to compensate the church for the negative impacts on the remainder property due to

---

[13] We conclude the DOT must have used the "before and after" approach in the jurisdictional offer, because severance damages are available to the property owner only if that approach is used. *Justmann v. Portage Cty.*, 2005 WI App 9, ¶9, 278 Wis. 2d 487, 692 N.W.2d 273 (2004).  The appraisal, too, discusses the "before" and "after" uses and value of the property.

[14] WISCONSIN STAT. § 32.09(6)(e) goes on to state:

> In determining severance damages under this paragraph, the condemnor may consider damages which may arise during construction of the public improvement, including damages from noise, dirt, temporary interference with vehicular or pedestrian access to the property and limitations on use of the property. The condemnor may also consider costs of extra travel made necessary by the public improvement based on the increased distance after construction of the public improvement necessary to reach any point on the property from any other point on the property.

having a highway in close proximity. Contrary to the DOT's determination that severance damages had been "shown to exist" (a necessary precondition to an award of such damages under WIS. STAT. § 32.09(6)), the appraisal concluded that there would be *no* severance damages that occurred as a result of the project. Given this discrepancy, we conclude the appraisal failed to form a "supporting part" or "fundamental ingredient" of the jurisdictional offer because it did not value a statutorily enumerated item of "just compensation" to which Christus Lutheran was entitled. Accordingly, the appraisal failed to value "all property proposed to be acquired," contrary to WIS. STAT. § 32.05(2)(a).

¶32 This conclusion is fully consistent with *Otterstatter*, which establishes that the government does not violate WIS. STAT. § 32.05(2)(b) and (3)(e) by adjusting the appraisal value upward in an immaterial amount based on its own conclusions about the value of the property and considerations attendant to litigation. The propriety of such adjustments, however, rests on a valid appraisal that reaches a conclusion about the value of the property interests impacted by the taking. Our review of the *Otterstatter* opinion and the briefs in that case shows that case was solely about the variance in the total dollar amounts of the jurisdictional offer and the appraisal; there was no assertion that the jurisdictional offer included items of damage that had not been valued in the appraisal. Put simply, absent a negotiated agreement with the property owner, if the DOT, based solely upon its independent review of an appraisal, believes additional statutory items of just compensation warrant inclusion in the jurisdictional offer, it must obtain a new appraisal that substantiates that belief and provides an opinion as to the value of those interests.

¶33 In sum, we conclude the appraisal in this case failed to value "all property proposed to be acquired," contrary to WIS. STAT. § 32.05(2)(a). In the

case of a partial taking, the items of just compensation include the damages specified by WIS. STAT. § 32.09(6), as applicable. The jurisdictional offer included a new line item for severance damages, which is a statutorily compensable item of damages that the appraisal specifically rejected. As a result, the jurisdictional offer was not sufficiently based upon the appraisal, as required by § 32.05(2)(b) and (3)(e). We reverse the order granting the DOT summary judgment and remand for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded for further proceedings.