# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2018AP1114 |

| | |
|---|---|
| COMPLETE TITLE: | Christus Lutheran Church of Appleton, Plaintiff-Appellant, v. Wisconsin Department of Transportation, Defendant-Respondent-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 389 Wis. 2d 600,937 N.W.2d 63
PDC No:2019 WI App 67 - Published

| | |
|---|---|
| OPINION FILED: | April 1, 2021 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 5, 2020 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Outagamie |
| JUDGE: | Carrie A. Schneider |

JUSTICES:
KAROFSKY, J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, DALLET, and HAGEDORN, JJ., joined. ROGGENSACK, C.J., filed a dissenting opinion, in which ZIEGLER and REBECCA GRASSL BRADLEY, JJ., joined.
NOT PARTICIPATING:

ATTORNEYS:

For the defendant-respondent-petitioner, there were briefs filed by *Hannah S. Jurss*, assistant attorney general; with whom on the brief was *Joshua L. Kaul* attorney general. There was an oral argument by *Hannah S. Jurss*.

For the plaintiff-appellant, there was a brief filed by *Alan Marcuvitz, Smitha Chintamaneni, Andrea Roschke,* and *Von Briesen & Roper, S.C.*, Milwaukee. There was an oral argument by *Alan Marcuvitz*.

An amicus curiae brief was filed on behalf of American Transmission Company LLC and its corporate manager ATC Management Inc.; Wisconsin Public Service Corporation, Wisconsin Electric Power Company, and Wisconsin Gas LLC by *Sara K. Beachy* and *Axley Brynelson, LLP*, Madison.

An amicus curiae brief was filed on behalf of Wisconsin Realtors Association by *Cori Moore Lamont* and *Wisconsin Realtors Association*, Madison.

An amicus curiae brief was filed on behalf of Owners' Counsel of America by *Joseph C. Niebler, Jr.* and *Niebler, Pyzyk, Carrig, Jelenchick & Hanley, LLP*, Menomonee Falls; with whom on the brief was *Michael W. Ryan* and *Ryan and Ryan*, Rosemont, Illinois.

An amicus curiae brief was filed on behalf of Eminent Domain Services, LLC by *Erik S. Olsen* and *Andrew D. Weininger*, Madison.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2018AP1114
(L.C. No. 2017CV452)

STATE OF WISCONSIN                    :        IN SUPREME COURT

**Christus Lutheran Church of Appleton,**

    **Plaintiff-Appellant,**

    **v.**

**Wisconsin Department of Transportation,**

    **Defendant-Respondent-Petitioner.**

**FILED**

**APR 1, 2021**

Sheila T. Reiff
Clerk of Supreme Court

KAROFSKY, J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, DALLET, and HAGEDORN, JJ., joined. ROGGENSACK, C.J., filed a dissenting opinion, in which ZIEGLER and REBECCA GRASSL BRADLEY, JJ., joined.

REVIEW of a decision of the Court of Appeals. *Reversed.*

¶1    JILL J. KAROFSKY, J.    In this case, the Wisconsin Department of Transportation ("DOT") acquired a portion of land owned by Christus Lutheran Church of Appleton ("Christus") through eminent domain. As part of that process, DOT issued a jurisdictional offer to purchase. We are tasked with determining the validity of that offer under the requirements of Wis. Stat. § 32.05 (2017-18).[1]

_____

[1] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

¶2 Christus filed the present action asserting that DOT's jurisdictional offer was invalid because DOT failed to provide "any appraisal upon which the Jurisdictional Offer of $403,200 is based, as required by Wis. Stat. § 32.05(2)(b) and (3)(e)." The parties filed competing summary judgment motions. The circuit court granted DOT's motion and denied Christus' motion, holding that DOT's jurisdictional offer was based on the initial appraisal.[2] The court of appeals disagreed, reversed the circuit court's decision, and remanded for further proceedings.[3]

¶3 We uphold the circuit court's grant of summary judgment to DOT and conclude that the jurisdictional offer was valid because it was "based" "upon" an initial appraisal of "all property proposed to be acquired," pursuant to Wis. Stat. § 32.05(2)(a)-(b), and (3)(e). Accordingly, we reverse the decision of the court of appeals.

I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶4 Christus is a non-profit entity that owns and operates a church in Greenville that abuts State Trunk Highway 15. As part of a major project to improve and reconstruct a portion of the highway, DOT sought to acquire 5.87 acres of Christus' property and obtain a temporary limited easement of 0.198 acres.

¶5 DOT began the condemnation process with a letter dated October 3, 2016, advising Christus: "In compliance with

---

[2] The Honorable Carrie A. Schneider of the Outagamie County Circuit Court presided.

[3] Christus Lutheran Church of Appleton v. DOT, 2019 WI App 67, 389 Wis. 2d 600, 937 N.W.2d 63.

Wisconsin statutes and federal regulations, you are receiving this letter, along with the enclosed appraisal report, to initiate negotiations for the acquisition of your property and/or property interests."[4]  In that letter, DOT stated that the estimated fair market value of the property to be acquired was $133,400, based on a third-party appraisal by Single Source, Inc.[5]  DOT provided Christus with an offer in that amount.

¶6   DOT's letter also included an itemized table that listed the allocations contained in the appraisal.  The letter further informed Christus that if it was not satisfied with the appraisal's valuation of the property to be condemned, Christus was "eligible to obtain an additional appraisal from a qualified appraiser of [its] choice" at DOT's expense within 60 days, by December 5, 2016, pursuant to Wis. Stat. § 32.05(2)(b).  Additionally, DOT called Christus' representative to encourage the church to obtain a second appraisal, explaining that "this was a complex acquisition and even if the two appraisals were

---

[4] Barbara Halley of MSA Professional Services was DOT's main representative and oversaw the negotiation efforts and communications with Christus' representative.  However, this opinion will refer to "DOT" generally when discussing the conversations between the parties and describing DOT employees' actions.  Jim Borowski served as Christus' primary representative until Christus retained counsel in late October 2016.

[5] While DOT uses in-house appraisers on some projects, it did not do so here.  The third-party appraiser engaged by DOT in this instance was not a DOT employee.

close in value, it would give [Christus] assurance that nothing had been missed."[6]

¶7    Over the next 60 days, DOT contacted both Christus' representative and its attorney and attempted to negotiate, in accordance with Wis. Stat. § 32.05(2a).  However, by the time of the second-appraisal deadline, Christus had not engaged in negotiations, accepted DOT's initial offer, or obtained a second appraisal at DOT's expense.

¶8    Despite the passing of the 60-day deadline, DOT continued in its efforts to negotiate with Christus.  In mid-December 2016 DOT emailed Christus' attorney asking if "there were any sticking points that needed to be worked on" and requested a response to the initial offer by the end of the year.

¶9    When Christus did not respond by January 6, 2017, DOT followed up with Christus' attorney to see if there was a decision regarding the initial offer.  At that time, DOT also reiterated that it was still interested in negotiating.  Three days later, Christus' attorney informed DOT that the church council would not agree to a voluntary sale.

¶10  DOT remained concerned about whether the initial appraisal accurately reflected, or fully addressed, the total impact of the acquisition.  These concerns were exacerbated due

---

[6] DOT and its agents kept a "negotiation diary" which "summarize[d] the contacts with the landowner" so that DOT could "ensure that the Department ha[d] complied with all of the steps necessary to acquiring the property under state law."

to the complete lack of negotiations and Christus' choice not to obtain a second appraisal. As a result, DOT emailed Christus' attorney: "This parcel has unique challenges associated with the acquisition. That is why I had encouraged the Church to have a second appraisal done. [A second appraisal] would have provided another opinion of the effects of the acquisition." Seeking to ensure that Christus would be fairly compensated, DOT opted to initiate its internal administrative revision process, which involves obtaining additional estimates and information in order to review the initial appraisal and offer. DOT advised Christus' attorney that: (1) it was obtaining estimates to make sure Christus was fully compensated; (2) it would be contacting Christus with a final offer; and (3) Christus' attorney should respond with questions or if there were "any specific matters [Christus] would like the DOT to research."

¶11 In reviewing the initial offer, DOT recognized that there "were a number of factors that made this acquisition more complex than it might first appear." DOT focused on three areas that the initial appraiser considered, but ultimately did not compensate, and "items the original appraisal did not fully address," including: (1) severance damages related to the building's increased proximity to the right of way;[7] (2) the cost to increase the parking lot to replace the loss of 26 parking spaces; and (3) the cost of "moving the retention pond."

---

[7] The church was situated 147 feet from the highway prior to the partial taking. However, after the taking, the church would be roughly nine feet away from the right of way.

¶12 As to severance damages, which the appraisal defined as "the loss in value to the portion of the larger parcel remaining after the taking and construction of the public improvement," the appraisal explicitly considered whether to allocate compensation for them, but did not do so. The appraiser reasoned that:

> The church market is very small in Wisconsin due to the special use nature of the property. We have researched church sales in the market and could not delineate any type of proximity damage to improvements based on available market information. Due to the lack of relevant sales and few market participants we were unable to determine any severance damages to church properties based on proximity damages. Therefore, we have determined that no severance damages are caused by the closer proximity to the State Trunk Highway 15 right of way in the after condition.

(emphasis added). As to the loss of the 26 parking spaces, the appraisal concluded that "after the acquisition more than ample parking remains to service the existing church facility," so additional compensation was unnecessary. Finally, as to the pond, the appraiser acknowledged that Christus would lose a "small surface pond with a surrounding gravel foot path and native prairie plantings," but did not provide additional analysis of that loss or whether a new pond would be necessary.

¶13 During the internal administrative revision process, DOT obtained estimates and received new information regarding the original construction of the pond and parking lot on the property. On February 13, 2017, Christus' representative spoke to DOT about the parking lot and the pond. Christus'

6

representative advised DOT that the landscaping pond was <u>not</u> a retention pond and indicated that, because of the changes to the parking lot, a new retention pond would be necessary. As a result of these new estimates and its conversations with Christus' representatives, DOT increased the amount of its offer. By letter dated March 24, 2017, DOT rescinded its initial offer and provided a "final offer" in the amount of $403,200. The letter included the following table with line-by-line comparisons showing the change in valuation from DOT's initial offer based on the internal review:

| Allocation | Description | Size | Unit | Appraisal offer $13,500/ac | Revised offer $16,000/ac |
|---|---|---|---|---|---|
| Land | Fee Acquisition | 5.870 | Acres | $79,245.00 | $93,920.00 |
| Temporary Limited Easement (TLE) | Temporary Limited Easement | 0.198 | Acres | $921.00 | $1,089.00 |
| Access Rights | Access to STH 15 | | | $0.00 | $0.00 |
| Site Improvements | Monument Sign | | | $8,400.00 | $8,400.00 |
| Site Improvements | Small Directional Sign | | | $558.00 | $558.00 |
| Site Improvements | Landscaping Contributory Value Including Pond | | | $12,420.00 | $30,495.00 |
| Site Improvements | Acquired Paved Parking | | | $27,690.00 | $29,820.00 |
| Site Improvements | Parking Space Restriping within the TLE Area | | | $150.00 | $150.00 |
| Site Improvements | Acquired Concrete Sidewalk | | | $1,288.00 | $1,288.00 |
| Site Improvements | Parking Lot Floodlight | | | $2,530.00 | $2,530.00 |
| Site Improvements | Retention Pond | | | | $45,000.00 |
| Cost to Cure | Parking Area | | | | $30,321.00 |
| Severance | Proximity of right of way | | | | $159,574.00 |
| Appraiser Rounding | | | | $198.00 | $55.00 |

Total Allocation          $133,400.00          $403,200.00

¶14  Most of the allocations in the final offer were either identical or close to the initial appraisal valuation.[8]  DOT did not decrease any of the allocations.  The final offer contained compensation for the three previously mentioned items that DOT had reviewed through the internal administrative revision process:  (1) severance damages based on the church's proximity to the new right of way (approximately $160,000); (2) the cost to replace 26 lost parking spaces (approximately $30,000); and (3) the cost to add a retention pond on the property (approximately $45,000).  DOT advised Christus that if it did not sign and return the enclosed agreement by April 5, 2017, DOT

---

[8] The revised offer included increased allocations for the land acquired, site improvements for landscaping, and paved parking.

would proceed with a jurisdictional offer to purchase, as provided in Wis. Stat. § 32.05(3).  On March 31, 2017, Christus' representative told DOT to proceed with a jurisdictional offer to purchase.

¶15  On April 11, 2017, DOT sent Christus a letter stating that due to failed negotiations, "it is now necessary for WisDOT to provide you with the enclosed Jurisdictional Offer to Purchase . . . it is WisDOT's last attempt to reach a settlement with you."  DOT clarified that "[i]f there is no response from you by 05/01/2017[9], WisDOT will presume that this offer is rejected."  Christus did not respond to the letter, and on May 9, 2017, DOT advised Christus that it was acquiring the property through the eminent domain process by issuing an award of damages pursuant to Wis. Stat. § 32.05(7).  DOT provided Christus with a check for $403,200 and a copy of the award of damages filed with the Outagamie County Register of Deeds.  After DOT sent the award of damages for recording, Christus hired a new attorney who communicated with DOT and indicated that the church was interested in starting negotiations.  At that point, however, it was too late since the jurisdictional offer had expired and the check had already been mailed.

¶16  In response, Christus commenced an action pursuant to Wis. Stat. § 32.05(5), alleging that DOT violated the statutory requirement that a jurisdictional offer be "based" "upon" the

---

[9] Christus had 20 days to either accept or reject the $403,200 jurisdictional offer, pursuant to Wis. Stat. § 32.05(6).

9

appraisal of the property, as required by § 32.05(2)(b) and (3)(e). The parties filed competing motions for summary judgment. The circuit court granted summary judgment to DOT, concluding that the "jurisdictional offer was 'based upon' the appraisal because the valuation of core line items retained a similar valuation." The circuit court explained that DOT "was able to revise its offer as part of the negotiation process without obtaining a new appraisal because its staff is experienced in real estate valuation, and it made efforts to fairly evaluate to [sic] the new line items."

¶17 The court of appeals reversed the circuit court's decision, reasoning that "the jurisdictional offer in this case was not sufficiently based on the appraisal" as required by Wis. Stat. § 32.05(2)(b) and (3)(e) because it included a new line item for severance damages, which the initial appraisal did not contain. Christus Lutheran Church of Appleton v. DOT, 2019 WI App 67, ¶2, 389 Wis. 2d 600, 937 N.W.2d 63. The court of appeals denied DOT's reconsideration motion. We granted DOT's petition for review.

## II. STANDARD OF REVIEW

¶18 "We review a grant of summary judgment independently, applying the same methodology as the circuit court." Pinter v. Vill. of Stetsonville, 2019 WI 74, ¶26, 387 Wis. 2d 475, 929 N.W.2d 547. Summary judgment shall be granted where the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Wis. Stat. § 802.08(2).

10

¶19 This case requires us to interpret several provisions of Wis. Stat. ch. 32, which presents a question of law that we review de novo. Noffke ex rel. Swenson v. Bakke, 2009 WI 10, ¶9, 315 Wis. 2d 350, 760 N.W.2d 156. The purpose of statutory interpretation is to "determine what the statute means so that it may be given its full, proper, and intended effect." State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110.

### III. ANALYSIS

¶20 We begin our analysis by outlining Wisconsin's statutory condemnation procedures. Then we discuss Otterstatter v. City of Watertown, 2017 WI App 76, 378 Wis. 2d 697, 904 N.W.2d 396, which the parties agree establishes the framework for evaluating whether a jurisdictional offer is "based" "upon" an appraisal, pursuant to Wis. Stat. § 32.05(2)(b) and (3)(e).[10] Finally, in light of Otterstatter, we address the parties' arguments regarding the validity of the jurisdictional offer and the new requirement enunciated in the court of appeals' decision.

### A. Statutory Condemnation Procedures

¶21 This appeal concerns the condemnation of property for transportation use, which is governed by the procedures set

---

[10] Wisconsin Stat. § 32.05(3)(e) uses the language "based" "on" rather than the "based" "upon" language found in § 32.05(2)(b). However, neither party has argued that this distinction is of import to our decision here.

forth in Wis. Stat. § 32.05.[11]  Pursuant to § 32.05, a condemnor is required to:

- "cause at least one, or more in the condemnor's discretion," appraisal to be made of "all property proposed to be acquired," § 32.05(2)(a);

- "provide the owner with a full narrative appraisal upon which the jurisdictional offer is based and a copy of any other appraisal made under par. (a)," § 32.05(2)(b);[12]

---

[11] Wisconsin Statutes divide condemnation procedures into: (1) "quick-take" procedure for transportation and sewer projects, Wis. Stat. § 32.05; and (2) "slow-take" procedure used for other takings, Wis. Stat. § 32.06.  See Waller v. Am. Transmission Co., LLC, 2013 WI 77, ¶¶56-57, 350 Wis. 2d 242, 833 N.W.2d 764.  This case involves the quick-take procedure.

[12] Creating an argument on behalf of Christus, the dissent asserts that Wis. Stat. § 32.05(2)(a) and (2)(b) describe different appraisals.  But see Serv. Emp. Int'l Union, Local 1 v. Vos, 2020 WI 67, ¶24, 393 Wis. 2d 38, 946 N.W.2d 35 ("We do not step out of our neutral role to develop or construct arguments for parties; it is up to them to make their case.").  According to the dissent, § 32.05(2)(b) requires "a more particularized appraisal than an initial appraisal made under § 32.05(2)(a)" because the § 32.05(2)(b) appraisal is distinguished from "any other appraisal made under par. (a)" and because § 32.05(2)(b) uses the term "full narrative appraisal."  Dissent, ¶62.  The dissent's analysis defies logic.  The legislature was simply acknowledging in § 32.05(2)(b) that there could be more than one appraisal since § 32.05(2)(a) says "one, or more."

- inform the owner of his or her right to obtain an appraisal at the condemnor's expense, § 32.05(2)(b); and

- attempt to negotiate personally with the owner, § 32.05(2)(a).[13]

---

The dissent also fails to recognize that "narrative appraisal" is a term of art in the real estate context. Rather than rely upon real estate-related sources for a definition or explanation, the dissent looks to an ordinary dictionary definition of "narrative," and concludes that § 32.05(2)(b) requires an appraisal "that gives all of the particulars of the taking for which the appraisal was made." Dissent, ¶56. However, the Appraisal Institute's Appraisal of Real Estate at 609, 612 (15th ed. 2020) instructs that "[i]n a narrative appraisal report, the most detailed and customizable format for reporting appraisal conclusions, an appraiser provides support and rationale for his or her opinions and conclusions . . . " and that "[n]arrative appraisal reports will vary in content and organization, depending on the needs of the client and other intended users . . . ." Similarly, the Dictionary of Real Estate Appraisal defines "narrative report" as "[a] written communication of the results of a valuation or review assignment presented to the client in narrative style rather than on a form or orally." Narrative Report, The Dictionary of Real Estate Appraisal (6th ed. 2015). With this context in mind, it is clear that when the term "narrative" qualifies the appraisal in § 32.05(2)(b) it is describing form and style, rather than substance, and that § 32.05(2)(b) does not describe a different appraisal than that described in § 32.05(2)(a).

[13] This attempt at negotiation on the part of the condemnor is a jurisdictional requirement to proceed with the condemnation. Arrowhead Farms, Inc. v. Dodge Cnty., 21 Wis. 2d 647, 652, 124 N.W.2d 631 (1963). We have recognized that public policy "encourages the settlement of controversies without resort to litigation," and that the legislature has made "attempt at negotiation compulsory in the field of eminent domain." Connor v. Mich. Wis. Pipe Line Co., 15 Wis. 2d 614, 624, 113 N.W.2d 121 (1962).

¶22 If negotiations fail to produce a voluntary sale, the condemnor may acquire the property by:

- sending the property owner a jurisdictional offer to purchase the property, Wis. Stat. § 32.05(3);[14]

- giving the property owner 20 days to accept or reject the jurisdictional offer, § 32.05(6); and

- (assuming the jurisdictional offer is not accepted) making an award of compensation "which shall be an amount at least equal to the amount of the jurisdictional offer," § 32.05(7)(a), the "just compensation" requirement.[15]

¶23 Wisconsin Stat. § 32.05 provides two methods for landowners to challenge a condemnation once damages have been awarded: (1) a right-to-take action, § 32.05(5), and (2) a just compensation proceeding, § 32.05(9)-(12). A right-to-take action, which Christus filed, is used "to contest the right of the condemnor to condemn the property described in the jurisdictional offer, for any reason other than that the amount of compensation offered is inadequate" and is the "only manner in which any issue other than the amount of just

---

[14] That offer must outline several items enumerated in Wis. Stat. § 32.05(3)(a)-(i), including a statement "that the appraisal or one of the appraisals of the property on which condemnor's offer is based is available for inspection at a specified place by persons having an interest in the lands sought to be acquired." § 32.05(3)(e).

[15] The just compensation requirement is mandated by the Fifth Amendment to the United States Constitution and Article I, Section 13 of the Wisconsin Constitution.

compensation . . . may be raised pertaining to the condemnation of the property described in the jurisdictional offer." § 32.05(5). The second method, a just compensation proceeding, is "when a property owner challenges the amount of compensation in a just compensation trial <u>after</u> an award of damages has been recorded" and is "directed to defects in the procedure for determining just compensation . . . ." <u>Otterstatter</u>, 378 Wis. 2d 697, ¶¶35-36 (alteration in original).

¶24 Here, Christus' challenge is related to the right of DOT to condemn its property. Christus asserts that the jurisdictional offer is void because it was not "based" "upon" an appraisal, as required by Wis. Stat. § 32.05(2)(b) and (3)(e); and that the appraisal did not value "all property proposed to be acquired," pursuant to § 32.05(2)(a).

### B. <u>Otterstatter</u>

¶25 The circuit court, court of appeals, and the parties all agree that <u>Otterstatter</u> establishes the framework for evaluating whether the jurisdictional offer was sufficiently based upon DOT's initial appraisal, so we provide a brief overview of that decision.

¶26 When the City of Watertown sought to acquire Otterstatter's property by eminent domain as part of an airport expansion project, it initially appraised the value of his land at $240,000. <u>Otterstatter</u>, 378 Wis. 2d 697, ¶5. The City sent Otterstatter the appraisal and an initial offer for $240,000, which he rejected as "too low." <u>Id.</u> Additionally, the City informed Otterstatter that he had the right to obtain his own

15

appraisal at the City's expense. Id. Otterstatter declined to do so, and remained unsatisfied with the City's offer, ultimately sending an email that described the offer as "an embarrassment." Id., ¶6. In light of Otterstatter's comments and a subsequent review of the initial offer, the City increased its offer by $30,000. Id., ¶7. The City also continued to try to negotiate with Otterstatter; when he refused, the City sent him a formal jurisdictional offer for $270,000. Id., ¶¶7-8. In response to the jurisdictional offer, Otterstatter filed a right-to-take action under Wis. Stat. § 32.05(5) alleging, among other complaints, that the jurisdictional offer was not "based" "upon" the appraisal, as required by § 32.05(2)(b), because it did not equal the appraisal amount. Id., ¶10.

¶27 The Otterstatter court noted that "Wisconsin Stat. ch. 32 does not contain a definition of the phrase 'based' 'upon.'" Id., ¶24. The court, relying on dictionary definitions, concluded that the meaning of "based" "upon" is that "the appraisal must be a supporting part or fundamental ingredient of the jurisdictional offer." Id. The court of appeals concluded that Otterstatter did not show that "the $30,000 increase deviated so substantially from the $240,000 appraisal that the appraisal can no longer be said to be a supporting part or fundamental ingredient of the $270,000 jurisdictional offer." Id., ¶25.

¶28 The Otterstatter court rejected the argument that a jurisdictional offer must equal the appraisal on which the offer is based and "decline[d] to insert such a matching requirement

16

into the statute." Id., ¶27. The court of appeals also noted that chapter 32 "explicitly establishes a process of required opportunity for negotiation" and that the City "was not required to stick with its initial offer based on its appraisal, but rather was required to negotiate to see if that number was too low." Id., ¶28. In short, the court rejected Otterstatter's challenges to the validity of the jurisdictional offer. Id., ¶4. With the Otterstatter framework in mind, we turn to Christus' arguments and the validity of DOT's jurisdictional offer.

## C. The Jurisdictional Offer Was Valid Under Wis. Stat. § 32.05(2)(a)-(b), and (3)(e)

¶29 Christus first asserts that DOT's jurisdictional offer was not "based" "upon" an appraisal, as required by Wis. Stat. § 32.05(2)(b) and (3)(e), because the jurisdictional offer contained several new line items, including severance damages, not found in the appraisal. Further, Christus claims that the appraisal failed to satisfy § 32.05(2)(a)'s "all property" requirement. Christus' arguments fail.

### 1. Wisconsin Stat. § 32.05 (2)(b) and (3)(e)

¶30 To begin, we adopt and reiterate the Otterstatter court's conclusion that a mere difference in dollar amounts between the initial appraisal and jurisdictional offer does not mean the jurisdictional offer was not "based" "upon" the appraisal, as required by Wis. Stat. § 32.05(2)(b) and (3)(e). Otterstatter, 378 Wis. 2d 697, ¶27. That is, "based" "upon" does not mean "equal to." This conclusion by the Otterstatter

17

court is further buttressed when we analyze § 32.05(2)(b) and (3)(e) in context. See Kalal, 271 Wis. 2d 633, ¶46 ("[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes . . . ."). While the legislature did not use the term "equal to" in § 32.05(2)(b) or (3)(e), it did use the term "equal to" in a different subsection of § 32.05: "The award shall also state the compensation for the taking which shall be an amount at least equal to the amount of the jurisdictional offer." § 32.05(7)(a) (emphasis added). Had the Legislature wanted to use the term "equal to" in § 32.05(2)(b) or (3)(e), it would have done so. See Pawlowski v. Am. Fam. Mut. Ins. Co., 2009 WI 105, ¶22, 322 Wis. 2d 21, 777 N.W.2d 67 ("When the legislature chooses to use two different words, we generally consider each separately and presume that different words have different meanings."). To summarize, just because there is a monetary difference between the initial appraisal and the jurisdictional offer does not mean the jurisdictional offer is not "based" "upon" the appraisal under § 32.05(2)(b) and (3)(e).

¶31 Otterstatter's definition of "based" "upon" as "a supporting part or fundamental ingredient" is further bolstered by Black Law Dictionary's definition of the verb "base" as "[t]o make, form, or serve as a foundation for."[16] Base, Black's Law

---

[16] See also "Base," Merriam Webster Online Dictionary (2021), https://www.merriam-webster.com/dictionary/base (defining the verb "base" as "to find a foundation or basis for" and "to make, form, or serve as a base for").

18

Dictionary 185 (11th ed. 2019).  Applying these definitions, it is evident that DOT's jurisdictional offer was based upon the initial appraisal and satisfies Wis. Stat. § 32.05(2)(b) and (3)(e).   The initial appraisal discussed and considered severance damages,[17] the loss of 26 parking spaces,[18] and the loss of the current pond on the property,[19] despite not allocating compensation for these items.  A side-by-side comparison shows that no allocation decreased between the initial appraisal and jurisdictional offer.  As the circuit court properly noted, most of the allocations "are relatively close in value," if not "actually identical in both offers."  The significant changes between the initial appraisal and the jurisdictional offer, as a result of DOT's internal administrative revision process,

---

[17] The third-party appraiser specifically considered severance damages, but was unable to make the determination based on the data it had:

> Due to the lack of relevant sales and few market participants we were unable to determine any severance damages to church properties based on proximity damages.   Therefore, we have determined that no severance damages are caused by the closer proximity to the State Trunk Highway 15 right of way in the after condition.

[18] While the appraisal acknowledged the loss of the 26 parking spaces, it concluded that "after the acquisition more than ample parking remains to service the existing church facility."

[19] As to the pond, the appraiser acknowledged that Christus would lose a "small surface pond with a surrounding gravel foot path and native prairie plantings," but the realization that Christus would need a retention pond on the property arose during later conversations with Christus' representative.

19

included increased allocations for: (1) severance damages because of the proximity of the new right of way; (2) compensation for the cost to replace the 26 lost parking spaces; and (3) compensation to add a retention pond. Adding these new amounts to the initial appraisal valuation does not make the initial appraisal something other than a foundation for the jurisdictional offer. To the contrary, the fact that most of the allocations remained unchanged from the beginning to the end of the process demonstrates that the appraisal served as the foundation for the offer.

¶32 While Christus and the court of appeals chided DOT for relying upon its internal administrative review process to re-examine its initial offer, DOT employed the process in order to ensure that it fully and fairly compensated Christus. Like in Otterstatter, DOT initially offered Christus the same amount as the initial appraisal, $133,400. When Christus decided against obtaining its own appraisal at DOT's expense, despite DOT repeatedly urging it to do so and referring to the project as a "complex acquisition," DOT reassessed the initial appraisal to ensure Christus would receive full compensation. See Otterstatter, 378 Wis. 2d 697, ¶28 (reasoning that the City "was not required to stick with its initial offer based on its appraisal, but rather was required to negotiate to see if that number was too low").

¶33 Consistent with its statutory responsibility to provide just compensation to landowners, and despite Christus' failure to take an active role in the process, DOT reconsidered

20

three losses that were identified, but not compensated or fully addressed, in the initial appraisal. DOT would have been remiss had it not diligently reviewed the initial appraisal given the acquisition's complexity and then revised its offer to reflect the full value of the property it sought to condemn. See id. (noting the lack of statutory language "that would prevent a condemnor . . . from offering more than the appraised amount as part of the [negotiation] effort it is required to make"). To summarize, DOT's actions in re-examining and reassessing several items that were considered but not fully addressed in the initial appraisal do not mean the jurisdictional offer is not "based" "upon" the appraisal under Wis. Stat. § 32.05(2)(b) and (3)(e).

### 2. Wisconsin Stat. § 32.05(2)(a)

¶34 Next, Christus adopts the court of appeals' analysis and asserts that the appraisal failed to satisfy Wis. Stat. § 32.05(2)(a)'s "all property" requirement. Sidestepping the question of whether the jurisdictional offer was "based" "upon" the initial appraisal pursuant to Otterstatter and § 32.05(2)(b) and (3)(e), the court of appeals concluded that the jurisdictional offer "fails for a more basic reason——namely, the DOT failed to obtain an appraisal that valued 'all property proposed to be acquired,' contrary to Wis. Stat. § 32.05(2)(a)." Christus, 389 Wis. 2d 600, ¶24. According to the court of appeals, because the jurisdictional offer included compensation for severance damages not found in the initial appraisal, the

21

appraisal failed to satisfy § 32.05(2)(a).[20] In reaching this conclusion, the court of appeals conflated "property" and "damages." The focus of § 32.05(2)(a) is the appraisal of property. The statute dictates that a condemnor "shall cause at least one, or more in the condemnor's discretion, appraisal to be made of all property proposed to be acquired." § 32.05(2)(a) (emphasis added). Chapter 32 defines "property" as "includ[ing] estates in lands, fixtures and personal property directly connected with lands." § 32.01(2). Damages are not included in chapter 32's definition of "property" and we do not "read into the statute words the legislature did not see fit to write." Dawson v. Town of Jackson, 2011 WI 77, ¶42, 366 Wis. 2d 318, 801 N.W.2d 316. Ultimately Christus failed to identify any portion of its property, as defined in chapter 32, that the initial appraisal excluded, and therefore the offer satisfies § 32.05(2)(a).[21]

---

[20] The court of appeals declined to address the additional compensation provided in the jurisdictional offer for the retention pond and the replacement of lost parking spaces, reasoning that "the parties have not focused individually on the addition of these line items of damages, nor has Christus Lutheran directly argued their inclusion constitutes a violation of the Wis. Stat. § 32.05(2)(a) 'all property' requirement." Christus, 389 Wis. 2d 600, ¶25 n.11.

[21] Additionally, the argument that the "statutorily enumerated items" of damage or loss listed in the just compensation statute, Wis. Stat. § 32.09, are "property" and must appear in the appraisal is misplaced. There is no reference to § 32.09 or "damages" in § 32.05(2)(a)'s "all property" requirement. Instead, § 32.09(6) dictates that those items must be "giv[en] effect" in the just compensation determination, which is not at issue since Christus filed a right-to-take action.

22

3. The Court of Appeals' New Requirement

¶35 Finally, we must explicitly reject the new requirement that the court of appeals enunciated in its opinion: "if the DOT, based solely upon its independent review of an appraisal, believes additional statutory items of just compensation warrant inclusion in the jurisdictional offer, it must obtain a new appraisal that substantiates that belief and provides an opinion as to the value of those interests." Christus, 389 Wis. 2d 600, ¶32. Not only does this requirement find no support in the statutory text,[22] it also raises a multitude of ethical concerns. The only way for condemnors like DOT to "obtain a new appraisal that substantiates [a particular] belief" would be for DOT either to improperly direct or to coerce its in-house appraisers or third-party appraisers into acting in accordance with DOT's instructions rather than making independent assessments. Yet, Wisconsin appraisers must comply with the Uniform Standards of Professional Appraisal Practice ("USPAP"), pursuant to Wis. Admin. Code §§ SPS 85.110-115, 86.01(1) (May 2019). USPAP ethics rules outline an appraiser's ethical obligation to be independent, impartial, and objective and forbids appraisers from "agree[ing] to perform an assignment that includes the reporting of predetermined opinions and conclusions." See The

---

[22] In fact, it creates a mandatory requirement for multiple appraisals despite the statutory language being discretionary. See Wis. Stat. § 32.05(2)(a) ("The condemnor shall cause at least one, or more in the condemnor's discretion, appraisal to be made of all property proposed to be acquired" (emphasis added).)

23

Appraisal Foundation, Uniform Standards of Professional Appraisal Practice 7 (2020-21 ed.). Therefore, any appraiser who provides an estimate or opinion based on DOT's directive would be in violation of her ethical code.

## IV. CONCLUSION

¶36 We uphold the circuit court's grant of summary judgment to DOT and conclude that the jurisdictional offer was valid because it was "based" "upon" an initial appraisal of "all property proposed to be acquired," pursuant to Wis. Stat. § 32.05(2)(a)-(b), and (3)(e).

*By the Court.*—The decision of the court of appeals is reversed.

¶37 PATIENCE DRAKE ROGGENSACK, C.J. *(dissenting)*. Condemnation is an extraordinary power. Properly exercised, condemnation permits the State to take private property for public use in a constitutionally permissible manner.

¶38 In order to comply with the Wisconsin Constitution's criteria necessary to taking private property for public use, Wisconsin has enacted detailed statutory procedures that protect owners' interests in their property. When the Department of Transportation (DOT) is the state agency wielding condemnation powers, it must strictly comply with procedures set out in Wis. Stat. § 32.05. Standard Theatres, Inc. v. DOT, 118 Wis. 2d 730, 742, 349 N.W.2d 661 (1984) (explaining that the rule of strict construction is to be applied to a condemnor's power).

¶39 Because DOT failed to comply with Wis. Stat. §§ 32.05(2) and (3), it ignored fundamental statutory obligations necessary to its jurisdiction to condemn Christus Lutheran Church of Appleton's property and therefore, DOT lacked jurisdiction. Jurisdictional errors cannot be overlooked. Accordingly, I would affirm the court of appeals. Because the majority opinion misses the interconnection among § 32.05(3), Wis. Stat. § 32.09 and § 32.05(2)(b) it erroneously interprets §§ 32.05(2) and (3), misreads Otterstatter v. City of Watertown, 2017 WI App 76, 378 Wis. 2d 697, 904 N.W.2d 396 and creates facts to excuse DOT's failures to comply with its statutory obligations, I respectfully dissent.

## I.  BACKGROUND

¶40  In 2016, DOT decided to upgrade State Highway 15.  A part of the planned improvements abut Christus Lutheran's property.  To facilitate Highway 15 improvements, DOT sought 5.87 acres in fee and .198 acres as a temporary easement from church property.

¶41  DOT had an appraisal of the property it sought to condemn prepared by Single Source, Inc.  Single Source appraised the value of DOT's entire taking at $133,400.  This appraisal, dated September 30, 2016, was presented to Christus Lutheran on October 3, 2016, together with DOT's $133,400 offer to purchase all property necessary to facilitate the Highway 15 improvements.  Christus Lutheran's congregation refused to sell.

¶42  The DOT also conducted an internal assessment of the $133,400 appraisal it had tendered to Christus Lutheran and arrived at a new ad hoc valuation for the property it sought.[1] DOT's ad hoc valuation contained items that were not listed and increased valuations for items that were listed in the Single Source appraisal.

¶43  In March 2017, DOT offered to purchase Christus Lutheran's property for $403,200.  This was a $269,800 increase in DOT's original $133,400 offer to purchase, which offer DOT supported with Single Source's appraisal.  DOT asserts that it increased the valuation of the taking without obtaining another appraisal, but rather, based on its own internal review.

---

[1] The record does not reflect whether DOT evaluated the Single Source appraisal before or after it offered to purchase the church's property for $133,400.

2

¶44 Part of DOT's increased valuation was the addition of $159,574 in severance damages, for which Single Source's appraisal had allocated nothing.[2] The record shows that prior to condemnation, the side of the church building was located "approximately 147.7 feet" from the Highway 15 right-of-way.[3] After DOT's acquisition, the side of the church would be located only 9 feet from the highway right-of-way.[4] In addition, a minimum of 12 foot side yard setback was required by local zoning.[5] Furthermore, Wis. Adm. Code § Trans 233.08, which contains DOT's administrative rules about setbacks from highway right-of-ways, should have been addressed by a knowledgeable appraiser.

¶45 DOT also increased Single Source's valuation by $30,321 for 26 parking spaces that DOT's condemnation would take. Again, the Single Source appraisal allocated nothing for taking 26 parking spaces. Single Source did so after concluding that the church "had more than ample parking" remaining for its 275-seat church.[6]

---

[2] In support of awarding no amount for severance damages, the appraisal explained, "Due to the lack of relevant sales and few market participants we were unable to determine any severance damages to church properties based on proximity damages. Therefore, we have determined that no severance damages are caused by the closer proximity to the State Trunk Highway 15 right of way in the after condition." Single Source appraisal, 12.

[3] Id.

[4] Id.

[5] Id.

[6] Id., 11, 12.

¶46 DOT further increased Single Source's valuation by $45,000 for a retention pond that had not been included in the Single Source appraisal. DOT's addition of $159,574 for severance damages, $30,321 for condemned parking spaces and $45,000 for a necessary retention pond totaled $234,895, all for items that were given no value in Single Source's appraisal.

¶47 DOT further increased values for items listed in the Single Source appraisal that were drastically undervalued, e.g., an $18,075 increase for landscaping, including a decorative pond that was taken, and $14,675 for land acreage. All in all, DOT's internal review increased the value of the property it sought by $269,800 to a total of $403,200, for which DOT made a second offer to purchase. This was a 202% increase over DOT's $133,400 initial offer to purchase, which was based on the Single Source appraisal. Once again, Christus Lutheran's congregation refused to sell.

¶48 On April 11, 2017, DOT made a $403,200 jurisdictional offer based on its internal valuation.[7] However, the jurisdictional offer stated that the "purchase price is based upon an appraisal of the owner's property of which a copy of the appraisal report has been provided to the owner."[8] The Single Source appraisal for $133,400 was the only appraisal provided to Christus Lutheran.[9]

---

[7] R. at 17-2.

[8] Id.

[9] DOT asserts that it increased Single Source's appraisal valuation without the benefit of another appraisal, but based solely on its internal review.

4

¶49 On May 15, 2017, Christus Lutheran sued the DOT pursuant to Wis. Stat. § 32.05(5), claiming that DOT did not have the right to condemn its property. Both parties moved for summary judgment, and the circuit court granted summary judgment to DOT. Christus Lutheran appealed, and the court of appeals reversed, concluding that the jurisdictional offer was not based on the appraisal DOT provided as § 32.05(2)(a) and (b) and Wis. Stat. § 32.09(6)(e) require. Christus Lutheran Church of Appleton v. DOT, 2019 WI App. 67, ¶2, 389 Wis. 2d 600, 937 N.W.2d 63. DOT petitioned for review, which we granted.

## II. DISCUSSION

### A. Standard of Review

¶50 The summary judgments issued in this case turn on the interpretation and application of Wis. Stat. §§ 32.05(2) and (3) and Wis. Stat. § 32.09(6)(e). Statutory interpretations and their applications to undisputed material facts present questions of law that we review independently, while benefitting from previous court discussions. Voces De La Frontera, Inc. v. Clarke, 2017 WI 16, ¶12, 373 Wis. 2d 348, 891 N.W.2d 803.

### B. Statutory Interpretation General Principles

¶51 Statutory interpretation begins with the language of the statute. If the meanings of the terms chosen by the legislature are plain, generally we stop our inquiry. Id., ¶14. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." State ex rel Kalal v. Circuit Court for Dane Cnty.,

5

2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret statutory terms in the context in which they are used, not in isolation. Id., ¶46. Therefore, surrounding or closely related statutes are important in our plain meaning review. Id.

¶52 However, if a statute is capable of being understood by reasonably well-informed persons in two or more ways, then the statute is ambiguous. Id., ¶47.

### C. DOT Statutory Framework

¶53 Wisconsin Stat. § 32.05 provides the statutory framework that is to be followed when DOT wields the power of condemnation. DOT must fit its actions within that statutory framework if it is to have jurisdiction to condemn. Warehouse II, LLC v. DOT, 2006 WI 62, ¶1, 291 Wis. 2d 80, 715 N.W.2d 213 (requiring DOT to negotiate with the property owner before issuing a jurisdictional offer because prior negotiation is "a fundamental, statutory requirement"). The statutes provide that notice of a jurisdictional offer, the parameters of which are set out in § 32.05(3), is "a jurisdictional requisite to a taking by condemnation." § 32.05(4).

¶54 The question then becomes, how does DOT construct a statutorily sufficient jurisdictional offer. The DOT begins by obtaining one or more appraisals of all property to be acquired for its highway improvement. For example, an appraisal may be made pursuant to Wis. Stat. § 32.05(2)(a), which states, "The condemnor shall cause at least one, or more in the condemnor's discretion, appraisal to be made of all property proposed to be acquired." The description of appraisals made pursuant to

§ 32.05(2)(a) is brief. Those appraisals require only that "all property proposed to be acquired" be valued in the appraisal. Paragraph (2)(a) does not say how that property should be described.

¶55 By contrast, Wis. Stat. § 32.05(2)(b) specifically describes the type of appraisal that is necessary to support a jurisdictional offer: "The condemnor shall provide the owner with a full narrative appraisal upon which the jurisdictional offer is based." § 32.05(2)(b). The legislature has used different words to describe appraisals in § 32.05(2)(a) and (2)(b); therefore, rules of statutory construction require us to presume we are independently to interpret the difference in words as defining different types of appraisals. See Pawlowski v. American Family Mut. Ins. Co., 2009 WI 105, ¶22, 322 Wis. 2d 21, 777 N.W.2d 67 (explaining that basic rules of statutory construction require us to give independent meaning to each word so that none is superfluous).

¶56 "Narrative" is not a defined term in Wis. Stat. ch. 32. However, as we have done so often in the past, I employ a common and approved definition found in a dictionary. State v. DeLain, 2005 WI 52, ¶17, 280 Wis. 2d 51, 695 N.W.2d 484. A common meaning of narrative is "the process of telling the particulars." Webster's Third New Int'l Dictionary 1503 (1961). "Narrative" is modified by the word, "full" in Wis. Stat. § 32.05(2)(b). Accordingly, I conclude that a "full narrative

7

appraisal" is one that gives all of the particulars of the taking for which the appraisal was made.[10]

¶57 In addition, Wis. Stat. § 32.05(2)(b) distinguishes the type of appraisal sufficient to support a jurisdictional offer from a § 32.05(2)(a) appraisal because both appraisals are addressed at the time a jurisdictional offer is made. Paragraph (2)(b) provides that in addition to a full narrative appraisal, the DOT also must provide "a copy of any other appraisal made under par. (a)." § 32.05(2)(b). Clearly, the legislature was talking about two different appraisals, if the first appraisal was made under paragraph (2)(a) rather than under paragraph (2)(b).

¶58 It is important to note that there is a statutory connection among what a jurisdictional offer must contain, which is set out in Wis. Stat. § 32.05(3), the "damages" listed in Wis. Stat. § 32.09 and an appraisal pursuant to § 32.05(2)(b) upon which a jurisdictional offer is based.

¶59 Wisconsin Stat. § 32.05(3) sets out all the items of which the jurisdictional offer must give notice. Section 32.05(3)(d) requires that a jurisdictional offer "[s]tat[e] the amount of compensation offered, itemized as to the items of damage set forth in s. 32.09." In so doing, § 32.05(3) reaches

---

[10] The majority opinion chaffs at my use of a dictionary definition for "narrative." Majority op., ¶21 n.12. It refers to a definition from the Appraisal Institute that defines a narrative appraisal as "the most detailed and customizable format for reporting appraisal conclusions." Id. That definition sounds ok to me too. Under either definition, a full, detailed description of what is being appraised is required.

back into Wis. Stat. § 32.09, which is applied during a just compensation proceeding, to require that the jurisdictional offer include items of "damage" listed in § 32.09 when they are relevant to the particular taking at issue.

¶60 One of the provisions of Wis. Stat. § 32.09 that is relevant to these proceedings is found in subsection (6), which addresses partial takings.[11] Subsection (6) recognizes that in a partial taking, the property condemned may need to be valued by more than one item of damage to fully compensate the owner. For example, § 32.09(6)(e) requires that "Damages resulting from actual severance of land including damages resulting from . . . proximity damage to improvements remaining on condemnee's land" must be valued. Therefore, the acreage value may not be the total value of the land that has been taken. Compensation may be required in the jurisdictional offer because the land taken also may have provided a buffer for the remaining property and the taking removes that buffer. Paragraph 32.09(6)(e) values such a buffer as severance damages, which is a component of the value of the property taken. Because a jurisdictional offer is required to include severance damages when they occur and because the jurisdictional offer must be based on a full narrative appraisal, severance damages must be a component of that full narrative appraisal when they occur.

D.  The Taking of Christus Lutheran's Property

---

[11] DOT's condemnation of church property is a partial taking.

9

¶61 Christus Lutheran contends that DOT did not make a jurisdictional offer sufficient to satisfy necessary statutory requirements and therefore, it lacks the right to condemn its property. I agree, for a number of reasons.

¶62 First, DOT did not provide Christus Lutheran with an appraisal sufficient to comply with the directive of Wis. Stat. § 32.05(2)(b).[12] A plain reading of § 32.05(2)(b) makes apparent that a "full narrative appraisal upon which the jurisdictional offer is based" is a more particularized appraisal than an initial appraisal made under § 32.05(2)(a).[13] This is so because of the way in which a (2)(b) appraisal is described, "a full narrative appraisal upon which the jurisdictional offer is based," and because a § 32.05(2)(b) appraisal is distinguished from "any other appraisal made under par. (a)."

¶63 That there is a difference in appraisal types is also supported by the statutory requirement that both Wis. Stat. 32.05(2)(b) and (2)(a) appraisals are required to be provided to the property owner when the jurisdictional offer is made if both have been completed. § 32.05(2)(b).

¶64 Second, the Single Source appraisal is not a full narrative appraisal upon which the jurisdictional offer was

---

[12] Wisconsin Stat. § 32.05(2)(b) provides: "The condemnor shall provide the owner with a full narrative appraisal upon which the jurisdictional offer is based and a copy of any other appraisal made under par. (a) and at the same time shall inform the owner of his or her right to obtain an appraisal under this paragraph."

[13] Wisconsin Stat. § 32.05(2)(a) provides: "The condemnor shall cause at least one, or more in the condemnor's discretion, appraisal to be made of all property proposed to be acquired."

based because it failed to value at least one item of property that is included in the $403,200 jurisdictional offer and of which the jurisdictional offer was required to give notice pursuant to Wis. Stat. § 32.05(3)(d).

¶65 To explain further, Wis. Stat. § 32.05(3)(d) provides that the jurisdictional offer must state "the amount of compensation offered, itemized as to the items of damage as set forth in s. 32.09." And, Wis. Stat. § 32.09(6)(e) requires the inclusion of severance damages in a partial taking when there are "damages resulting from severance of improvements or fixtures and proximity damage to improvements remaining on condemnee's land." Because a jurisdictional offer is required to include severance damages which occurred here and because the jurisdictional offer must be based on a full narrative appraisal, severance damages must be a component of that full narrative appraisal.

¶66 The majority opinion concludes that totally missing severance damages is no problem because DOT is required to pay just compensation for "property," which is different from "damages."[14] The majority opinion asserts that the court of appeals conflated 'property' and 'damages.'"[15] It then relates that the definition of "property" found in Wis. Stat. § 32.01(2) does not include the word, "damages," even though "property" as defined in § 32.01(2) includes "estates in lands."[16]

---

[14] Majority op., ¶34.

[15] Id.

[16] Id.

11

¶67 This reasoning misses that in order to constitutionally take property of another the DOT must compensate for all items of value that the property taken had provided to the owners and that those items are described as "damages" in condemnation parlance. Wis. Town House Builders, Inc. v. City of Madison, 37 Wis. 2d 44, 54, 154 N.W.2d 232 (1967) (explaining that Wis. Stat. § 32.05(3)(d) "requires an itemization of damages, [which] is not directional but mandatory"). The legislature understands this itemization requirement and has enacted statutes that recognize all items of value for property taken. For example, acreage valuation is one item of value of the land taken; severance damage is another item of value for the same land. Severance damages recognize the buffer from the highway right-of-way that the land taken had provided to the property remaining with the owner.

¶68 To explain further, before condemnation, Christus Lutheran's church building had a 147.7 foot side yard buffer from the Highway 15 right-of-way.[17] After condemnation, the church building would be only 9 feet from Highway 15's right-of-way.[18] Certainly, having trucks rumble-by only 9 feet from where church services are being conducted removed a significant sound buffer and safety barrier that the land DOT is taking had provided to religious service participants.

¶69 This item of the property's value is called "damages" in part because Wis. Stat. § 32.05(3)(d) requires that in a

_____

[17] Single Source appraisal, 12.

[18] Id.

12

jurisdictional offer "the amount of compensation offered, [is] itemized as to the items of damages as set forth in s. 32.09." Wisconsin Stat. § 32.09(6)(e) addresses an item of value in the land taken during a partial taking because of subsequent proximity of improvements that are on the property remaining with the owner, e.g., the proximity of Christus Lutheran's church building to the Highway 15 right-of-way. Therefore, the term "damages" is a statutory term for items of value that are within the property DOT takes. Id.

¶70 The majority opinion also creates facts to excuse the Single Source appraisal's failure to include any value for severance damages, parking replacement or a retention pond and its gross undervaluation for landscaping and acreage taken. It does so in part by repeatedly misstating facts. For example, the majority opinion says: "Most of the allocations in the final offer were either identical or close to the initial appraisal valuation."[19] "[T]he fact that most of the allocations remained unchanged from the beginning to the end of the process demonstrates that the appraisal served as the foundation for the offer."[20]

¶71 I do not agree that $159,574 is "identical or close to" the $0.00 that Single Source allocated for severance damages. And, the numbers tell us that the facts did change

---

[19] Majority op., ¶14; this factual creation is repeated at ¶31.

[20] Majority op., ¶31.

during a process that started with a $133,400 initial offer to purchase and was followed by a $403,200 jurisdictional offer.

¶72 The record shows that all totaled, Single Source valued the property taken at $269,800 less than DOT's jurisdictional offer. Notwithstanding the 202% increase in the jurisdictional offer over the Single Source appraisal, the majority opinion says that is ok given its interpretation of Otterstatter.[21] The majority opinion misreads Otterstatter.

¶73 Otterstatter involved a jurisdictional offer that was $30,000 higher than the $240,000 appraisal that the City had provided to Timothy Otterstatter. Otterstatter, 378 Wis. 2d 697, ¶1. This was a 12.5% increase in the jurisdictional offer amount over the appraisal amount. Otterstatter contended, among other things, that given the difference in the amount of the jurisdictional offer and the amount set out in the appraisal, the jurisdictional offer was invalid. Id., ¶2. He relied on Wis. Stat. § 32.05(2)(b), saying that the jurisdictional offer was not "based" "upon" the appraisal. Id., ¶24.

¶74 The Otterstatter court disagreed, reasoning that "there is no dispute that the meaning of 'based' 'upon' is that the appraisal must be a supporting part or fundamental ingredient of the jurisdictional offer." Id. The Otterstatter court said, "We see nothing in the record that undermines the City's position that the February 2015 appraisal was a supporting part or fundamental ingredient of its jurisdictional offer." Id., ¶25.

---

[21] Majority op., ¶¶24-32.

14

¶75 Otterstatter also argued that the jurisdictional offer was not based upon the appraisal because they were not equal. Id., ¶26. The Otterstatter opinion found no statutory language "that the jurisdictional offer must equal the appraisal on which the offer is based." Id., ¶27.

¶76 I have no problems with Otterstatter given the facts set forth therein, but Otterstatter does not control the outcome in the case before us. The facts and the focus of the court's inquiry in Otterstatter were entirely different from what we review here. All of the items of property to which a value was attached for the jurisdictional offer were valued in the appraisal in Otterstatter. It was a full narrative appraisal. By contrast, all items of Christus Lutheran's property were not valued in the Single Source appraisal. Specifically, severance damages under Wis. Stat. § 32.09(6)(e) were not included in the Single Source appraisal and Wis. Stat. § 32.05(3)(d) requires that they be included if the taking causes severance damages.

¶77 To explain further, Wis. Stat. § 32.05(3) describes what must be included in the "Jurisdictional Offer to Purchase." Section 32.05(3)(d) requires that the jurisdictional offer give notice of "the amount of compensation offered, itemized as to the items of damage set forth in s. 32.09." Section 32.05(3)(d)'s reference to Wis. Stat. § 32.09 requires the jurisdictional offer to reach back into § 32.09(6)(e) to include severance damages when they exist. The statutes require that the jurisdictional offer be based upon an appraisal that has been given to the property owner. § 32.05(3)(e) ("appraisal of

15

the property on which condemnor's offer is based is available for inspection") and § 32.05(2)(b) ("a full narrative appraisal upon which the jurisdictional offer is based"). Because severance damages must be in the jurisdictional offer when they exist, § 32.05(3)(d), and because the appraisal given to the owner must be the document on which the jurisdictional offer is based, §§ 32.05(3)(e) and 32.05(2)(b), severance damages must be part of the appraisal as well. When they should have been but were not, the jurisdictional offer cannot be based upon the appraisal as the statutes require.

¶78 The difference between the appraisal and the jurisdictional offer in Otterstatter was $30,000, a 12.5% increase in valuation. The difference between the Single Source appraisal of $133,400 and the DOT jurisdictional offer of $403,200 was $269,800, a 202% increase in valuation.

¶79 That the majority opinion sees no legal difference when interpreting "based upon" between a 12.5% increase of the appraised valuation where all items were valued, as was present in Otterstatter, and the 202% increase of the appraised valuation that excluded a required value for severance damages is quite extraordinary. I agree with the court of appeals that the jurisdictional offer was not based upon the appraisal that DOT provided. The jurisdictional offer was based upon DOT's own internal review.[22]

_____

[22] One could argue that because DOT significantly increased the value of the taking over Single Source's appraisal that should be the end of it. I disagree. First, the legislature has required DOT to provide a full narrative appraisal so that the property owner would have the particulars for the values set

16

¶80 The majority opinion also repeats and repeats that Christus Lutheran was told it had the right to get its own appraisal for which DOT would pay.[23] However, that Christus Lutheran did not obtain an appraisal has nothing to do with whether DOT complied with its statutory obligations to "provide the owner with a full narrative appraisal upon which the jurisdictional offer is based." Wis. Stat. § 32.05(2)(b).

¶81 When a statute requires that an act be done and the power of condemnation cannot be exercised without that act, its omission is a fundamental defect in the DOT's attempt to obtain condemnation jurisdiction. See Waller v. Am. Transmission Co., LLC, 2013 WI 77, ¶6, 350 Wis. 2d 242, 833 N.W.2d 764 (explaining that when a condemnor does not include an uneconomic remnant in a partial taking, a right-to-take action will lie). DOT was required to provide Christus Lutheran with a "full narrative appraisal upon which the jurisdictional offer is based and a

out in the appraisal. In the condemnation before us, the property owner has been given no explanation about why DOT chose $159,574 as the amount of severance damages when Single Source chose $0.00. Further, Single Source's appraisal is not "full." It does not include all that the DOT is taking. Second, after condemnation, the church building will be only 9 feet from Highway 15's right-of-way. It is possible that Christus Lutheran's congregation may be required to move the church building to another location on the property in order to continue to use it for religious services. Wisconsin Adm. Code § Trans 233.08 (Setback requirements and restrictions) indicate moving the church building should have been a concern that the appraisal addressed. Perhaps DOT valued such a possibility, but perhaps not. We don't know, and neither does Christus Lutheran. DOT cannot substitute its internal valuation for a full narrative appraisal.

[23] Majority op., ¶¶6, 32.

17

copy of any other appraisal made under par. (a)." Wis. Stat. § 32.05(2)(b). Because the jurisdictional offer here was required to include severance damages, the Single Source appraisal that contained no severance damages was not an appraisal on which the jurisdictional offer was based. DOT's failure to provide such an appraisal is a fundamental defect in its attempted jurisdiction to condemn Christus Lutheran's property.

### III. CONCLUSION

¶82 Because DOT failed to comply with Wis. Stat. §§ 32.05(2) and (3), it ignored fundamental statutory obligations necessary to its jurisdiction to condemn Christus Lutheran's property and, therefore, DOT lacks jurisdiction. Jurisdictional errors cannot be overlooked. Accordingly, I would affirm the court of appeals. Because the majority opinion misses the interconnection among § 32.05(3), Wis. Stat. § 32.09 and § 32.05(2)(b) it erroneously interprets §§ 32.05(2) and (3), misreads Otterstatter and creates facts to excuse DOT's failures to comply with its statutory obligations, I respectfully dissent.

¶83 I am authorized to state Justices ANNETTE KINGSLAND ZIEGLER and REBECCA GRASSL BRADLEY join this opinion.

18